UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 5:22-cr-84-JA-PRL-1

HENRY TROY WADE
_____/

# DEFENDANT HENRY TROY WADE'S MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Henry Troy Wade, through undersigned counsel, hereby moves for judgment of acquittal under Fed. R. Crim. P. 29(c). Mr. Wade contests the government's proof as to each essential element of the charged offenses. In addition to his general dispute with the evidence on each element of the offenses charged, Mr. Wade submits specific grounds for relief detailed below, and more broadly, urges the Court to find that as to each essential element of each count on which the jury returned a guilty verdict, there was a lack of proof sufficient to meet the government's burden. Mr. Wade renews all prior arguments made in his oral Rule 29 motions at the close of the government's case and at the close of all the evidence. The Court reserved ruling on the Rule 29 motion made at the close of the government's case. The sufficiency determination in this case thus turns on the failure of the government to present evidence in its direct case, and it may not rely on evidence presented thereafter.

## I. LEGAL STANDARD

Rule 29(c) enables defendants, after a jury has returned its verdict, to raise grounds for acquittal whether or not a prior motion was made or grounds for acquittal were raised

1

at trial. In the intense moments of a trial, arguments for acquittal are often abridged or omitted amid the intense moments of a trial. Accordingly, the post-trial motion for judgment of acquittal offers the defendant a further opportunity to show, and the Court upon reflection to consider whether, the government failed to satisfy its burden of proof. Rule 29(c) motions are governed by the tests for substantial evidence sufficient to convince a reasonable jury that the government proved all the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). While the government need not exclude every reasonable hypothesis of innocence, a verdict cannot stand on an uncertain foundation. *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989). This principle is especially important in cases involving an alleged misstatement on a government form. *See, e.g., United States v. Whiteside*, 285 F.3d 1345, 1351 (11th Cir. 2002) (reversing health care false statement conviction where regulations and administrative authority did not 'clearly answer' the dispositive elemental question regarding reporting of information).

In reviewing a motion under Rule 29(c), "a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999). The district court must view the evidence in the light most favorable to the government, resolve any conflicts in the evidence in favor of the government, and must accept all reasonable inferences that tend to support the government's case. *Id*. However, "the Supreme Court has never squarely held that the inference standing alone will support a guilty verdict without the existence of corroborating evidence or circumstances." *Cosby v. Jones*, 682 F.2d 1373, 1380 (11th Cir.

1982). Further, "[w]here the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected," the verdict must be set aside." *Yates v. United States*, 354 U.S. 298, 312 (1957), overruled on other grounds in *Burks v. United States*, 437 U.S. 1 (1978).

The Eleventh Circuit reviews de novo a district court's disposition of a motion for acquittal under Rule 29(c). *United States v. Myrie*, 479 F. App'x 898, 902 (11th Cir. 2012). If the record reveals a "lack of substantial evidence from which a factfinder could find guilt beyond a reasonable doubt," the appellate court will reverse the defendant's conviction. *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994).

The six-count indictment in this case charged only wire fraud in violation of 18 U.S.C. § 1343, with each count corresponding. The government alleged in the indictment that Mr. Wade made false representations on his EIDL loan applications, and that as a result of those false representations, Mr. Wade received loan proceeds he otherwise would not have received. The indictment did not identify these false statements, either by reference to the statements or by reference to the general topics the statements covered. And, notably, the government did not charge Mr. Wade with any false statements in violation of 18 U.S.C. § 1001; rather, it attempted to prove substantive wire fraud on the basis of alleged false statements alone. Even if the government could establish that Mr. Wade himself made false statements—which it cannot—that alone would still be insufficient to sustain the wire fraud convictions under binding Circuit precedent. "The wire-fraud statute, 18 U.S.C. § 1343 does not enact as federal law the Ninth Commandment given to Moses on Sinai." *United States v. Takhalov*, 827 F.3d 1307, 1310 (citing *Exodus* 20:16). It "forbids

3

only schemes to *defraud*, not schemes to do other wicked things, e.g., schemes to lie, trick, or otherwise deceive." *Id*. (emphasis in original).

I. **The government relied on a deficient fraud theory.**

The government's case relied on a fraudulent inducement theory deemed insufficient by the Eleventh Circuit in *Takhalov*, 827 F.3d 1307, and currently pending before the Supreme Court in *United States v. Kousisis*, where the United States Solicitor General has argued that if the petitioners there prevail, the wire fraud statute would "not criminalize schemes to fraudulently induce a victim into agreeing to pay for property or services so long as, at the end of the transaction, the victim has not suffered a net pecuniary loss." *Kousisis v. United States*, No. 23-909, U.S. Br. at 20. That is the alleged theory the government sought to criminalize here. The question presented in *Kousisis* implicates the government's core theory in this case: "the validity of the fraudulent inducement theory of mail and wire fraud." Pet. for Cert., *Kousisis v. United States*, U.S. No. 23-909, 2024 WL 750795, at *i. In the Eleventh Circuit, however, the validity of such a theory has already been squarely rejected.

The Eleventh Circuit held in *Takhalov* that "a schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick." *Takhalov*, 827 F.3d at 1313. "And this is so ***even if the transaction would not have occurred but for the trick***." *Id*. (emphasis added). "For if there is no intent to harm, there can only be a scheme to *deceive*, not a scheme to *defraud*." *Id*. In Mr. Wade's case, the government introduced no evidence of any intention to cause economic injury to the SBA, and no evidence that the intended bargain to which the SBA

4

was induced to enter was financially harmful to the SBA. Instead, the government took the position "every question in th[e EIDL] application mattered" because "the SBA wanted the information and they wanted it truthful." DE:231 at 79. The government's belated effort to show some form of materiality in cross-examination of the defense expert came too late for purposes of the Rule 29 motion; the government has the burden to prove its case in chief, and it failed to do so here.

*Takhalov* prohibits the government's approach in this case by requiring both that any misrepresentation be material to the transaction and also requiring an intent to harm. The government failed to produce any evidence that any of the alleged misrepresentations materially affected the value of the transaction and caused it to be harmful to the bank. In *Takhalov*, the government presented evidence that a bar had hired "B-girls" to pose as tourists, locate visiting businessmen, and lure them into the defendants' bars and nightclubs. Id. at 1310. But just as the government failed in *Takhalov* to prove that the lies told by the "B-girls" caused pecuniary harm, the government here cannot rely only on its assertions about technical eligibility requirements and business income brackets to sustain a wire fraud conviction. The government also failed to show the absence of employees through its speculative evidence with regards to Counts 1 and 3.

The fraud theory advanced by the government is not only inconsistent with Circuit precedent but also unworkable. If the government is not required to show some intent to cause pecuniary harm, some misrepresentation that went to the heart of the bargain—as it failed to do here—then any intangible rights theory would be sufficient to sustain a wire fraud conviction, and "*any* purposeful breach of contract could be deemed a federal fraud."

5

Brief for The Cato Institute, Due Process Institute, and the National Association of Criminal Defense Lawyers as Amici Curiae, at 6, *United States v. Kousisis*, No. No. 23-909. "[B]y redefining all contract provisions as property interests so long as they are important enough to the victim to affect its decisions, the theory would deprive defendants of fair notice of what conduct may be deemed criminal." *Id*. The government then could transform any false statement into a "scheme to defraud" simply by asserting, as the government did here, that "the SBA wanted the information and they wanted it truthful." DE:231 at 79. A verdict cannot rest on uncertain foundation, *Kelly*, 888 F.2d at 740, but this verdict necessarily does as a result of the government's assertion that *any* misrepresentation is sufficient evidence of a scheme to defraud.

That is the problem with the government's case. It seeks to convert regulatory preferences governing eligibility and awarding of loans into property interests, and that approach contradicts *Takhalov*. The government needed to prove that Mr. Wade devised a scheme to cause some pecuniary harm to the SBA, and it failed to do so here. The Supreme Court has made clear that the mail and wire fraud statutes protect only "traditional property interests." *Ciminelli v. United States*, 598 U.S. 306, 309 (2023). The wire fraud statute protects *property rights*—it does not protect the government's regulatory interests in prioritizing as loan recipients businesses in a certain income bracket or with a certain number of employees, nor does it protect the government's regulatory interest in enforcing its own eligibility requirements, and nor does it protect the government's regulatory interest in awarding loans or grants only to businesses that are in full compliance with complex state and federal regulatory schemes. *Cf.* DE 231:79 (government arguing "every question

6

in this application mattered . . . as to the eligibility of the candidate to receive the loan"); *id*. at 87 (asserting business "was not operating with a United States Department of Agricultural footprint"). The government's closing argument instructed the jury that it should convict Mr. Wade because, according to the government, Mr. Wade made false representations when the SBA wanted him to tell the truth. That is not enough under *Takhalov* and its progeny to establish substantive wire fraud—which of course carries with it much more significant sentencing exposure than a false statement conviction. The government chose to charge this case as wire fraud rather than false statements; it therefore needed to prove every essential element of that statute, and it failed to do so here. *See United States v. Hu*, 2021 WL 4130515 (E.D. Tenn. September 9, 2021) (granting Rule 29 motion and relying heavily on *Takhalov*).

For similar reasons, nor do the government's arguments with respect to "where the money went", DE:231 at 92, establish that Mr. Wade had the specific intent to defraud. *Cf. United States v. McCarrick*, 294 F.3d 1286, 1292 (11th Cir. 2002) ("[T]he fact that McCarrick canceled the paint booth only four weeks after it was ordered, during the third week of January 1995, does not provide a sufficient basis, on this record, for the inference that he did not intend to buy it in the first place."). This "misuse of funds" issue is also central to the *Kousisis* case pending before the Supreme Court.

Whatever administrative violation is otherwise at issue in any non-compliance by Mr. Wade with SBA requirements, economic harm was not the object of the *loan acquisition*, and thus the fraudulent inducement theory is insufficient. "[A]ny reasonable doubt about the application of a penal law must be resolved in favor of liberty. ... Lenity

7

works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws." *Wooden v United States*, 142 S. Ct. 1063, 1081–82 (2022) (Gorsuch, J., concurring in the judgment).

> II. **The government failed to prove that Mr. Wade personally submitted the applications.**

As even the government recognized in closing argument, "[a]ll of these applications were submitted online." DE:231 at 96. "These applications were signed by typing in someone's name." *Id*. The government failed to prove that Mr. Wade personally submitted these applications. It failed to exclude all reasonable doubts that someone other than Mr. Wade submitted the applications.

Specifically, eight names of other individuals came up during trial, and the government failed to prove beyond a reasonable doubt that Mr. Wade—who lost sight in one of his eyes after a 2019 injury—rather than any of those people, submitted the applications. These individuals include Joseph Bivona, Keysheila Rains, Layla McMahon, Anthony James, Ms. Brown, Ms. Eubanks, Phil Fleischmann, and Jacquetta Wade.

To begin, Bivona's name showed up in the SBA notes for every application the government accused Mr. Wade of submitting. The government failed to introduce any evidence disproving the reasonable doubt that Bivona submitted the EIDL applications under Mr. Wade's name. The government failed to rule out the reasonable doubt that Bivona committed the wire fraud.

Next, the jury saw evidence of Rains's name and signature appearing on the signature card for Little Lights' MidFlorida account. Despite having access to Mr. Wade's

bank account, the government introduced no evidence disproving that Rains submitted the EIDL application for Little Lights without Mr. Wade's knowledge then subsequently used any SBA funds in the Little Lights bank account. Thus, the government failed to rule out the reasonable doubt that Rains committed the wire fraud alleged against Mr. Wade.

Similarly, the government introduced no evidence that proved Mr. Wade, rather than McMahon, fraudulently submitted the EIDL applications. The jury received evidence showing that McMahon tried to sell Mr. Wade the property at 5735 SE 33rd Ct, Ocala, Florida—even though she was not the owner of that property. The jury also saw that McMahon, as part of that attempt sale, had access to Mr. Wade's signature. And Kevin Kulbacki, a Court-admitted expert witness in electronic signatures, testified that someone can take a picture of a signature and affix it to the documents, like loan agreements. The government failed to rule out the reasonable doubt that McMahon committed the wire fraud.

The government also failed to rule out the reasonable doubts that five other people who had access to Mr. Wade's personal, financial, and business information committed the wire fraud: Ms. Brown, Ms. Eubanks, Phil Fleischmann, Jacquetta Wade, and Anthony James. Erin Horton, chief operations manager at Wade Development Group (one of Mr. Wade's companies), testified that each of those five people had access to and used Mr. Wade's personal and financial information, including when Mr. Wade was temporarily disabled by a work injury he suffered in late 2019—before the applications were submitted. The government failed to rule out the reasonable doubts that any of these people were the

9

ones who submitted the applications. A judgment of acquittal is thus warranted on this basis.

> III. **The government cannot sustain the conviction on the aiding-and-abetting or *Pinkerton* theory that the government improperly argued in closing.**

The government charged this case against Mr. Wade individually—it did not charge the case as a conspiracy, and it neither requested an aider and abettor instruction nor a *Pinkerton* instruction. The government tried to salvage its problems establishing sufficient evidence of Mr. Wade's guilt by improperly arguing a joint culpability theory in closing; Mr. Wade thus moves for a judgment of acquittal on this basis as well. *See* Motion for New Trial at 11; *id.* at fn. 4.

The government offered no evidence of any aiding and abetting, any joint participation, or any conspiracy in its case in chief. It therefore cannot rely on that theory to defeat Mr. Wade's Rule 29 motion. Where the Government proceeds on one express theory, the Government is restricted to that theory for purposes of a motion for judgment of acquittal. *See United States v. Takhalov*, 838 F.3d 1168, 1170 (11th Cir. 2016) ("The government also could have argued that the April 21 email constituted 'fraud after the fact.'"; because that theory was not offered at trial, it cannot be the basis for conviction); *United States v. Willner*, 795 F.3d 1297, 1310 (11th Cir. 2015) (conviction cannot be sustained on theory of guilt where "Government did not prosecute [the defendant] on that theory"). At the close of the government's case, when a judgment of acquittal was first sought, the government had not announced to the parties, the jury, or the Court that it would proceed on any form of an unindicted aiding and abetting theory under 18 U.S.C. § 2, and

it had not presented any evidence to support such a theory. Nor had it presented any evidence to support a *Pinkerton* instruction. The government cannot sustain the conviction on such a theory; it must prove that Mr. Wade personally submitted the applications.

### IV. The government failed to prove material misrepresentations.

In addition to resting on an insufficient fraud theory, *see* Part I, *supra*, the government failed to prove any material misrepresentations that affected the benefit of the bargain, as it must prove under *Takhalov* and its progeny. The indictment failed to allege the specific "false pretenses, representations, or promises" that were "about a material fact," as required to support a wire fraud conviction. *See United States v. Takhalov*, 827 F.3d at 1316. The government failed to prove beyond a reasonable doubt that Mr. Wade did not financially qualify for the loans. And it failed to meet its burden by seeking to cast doubt on, rather than offer proof to establish, whether certain alleged representations made on the application were accurate. *See, e.g.,* DE:231 at 83 (arguing in closing that because business did not comply with Florida license requirements, representations about income were "unreasonable").

In this case, each application for which the government charged Mr. Wade with wire fraud had six initial eligibility questions and three additional disqualifying questions. None of those core eligibility or disqualification questions rendered Mr. Wade's companies ineligible under the EIDL application. Accordingly, no reasonable juror could find beyond a reasonable doubt that Mr. Wade had the specific intent to knowingly make false representations that were material to the SBA's decision to grant or deny the six applications at issue here. The Court should enter a judgment of acquittal on all six counts

because of insufficient evidence for a reasonable juror to find beyond a reasonable doubt that Mr. Wade made misrepresentations material to the SBA's decision to grant or deny an EIDL loan application.

Nor did the government prove materiality. None of the core questions on the applications addressed when the businesses are in operation or the business addresses, which was the government's primary argument at trial with respect to the false representations alleged. The government cannot retroactively deem information material simply because in hindsight it might not choose to offer a certain applicant a loan, or might prioritize a different applicant. The EIDL program was designed to pump money into the economy amid fears of a recession; the loan applications asked certain threshold questions and the government cannot now assert that other information, outside the scope of those threshold questions, was in fact material.

The government's position that *everything* is material is similarly untenable: it cannot prove materiality of a misrepresentation simply by asserting that the SBA wanted everything to be truthful. *See* DE:231 at 79 (asserting that "even the contact information mattered in this case"); *id*. at 80 ("These all show what the SBA considered in determining whether or not a candidate was eligible for a loan," so "I implore you to read those again to see what was material to their decision and see whether the information presented to them through the loans or through the follow-up correspondence was false"). The government's asking the jury to read the applications to "see what was material" undermines confidence in the verdict—due to the government's muddled theory of the case, the Court cannot determine whether the jury reached a unanimous verdict as to which

misrepresentations the government proved beyond a reasonable doubt; nor can it determine whether those misrepresentations were indeed material.

**V.     The government's count-specific evidence was similarly insufficient.**

The government's case was not only deficient in its overarching theory of fraud; its failure to prove that any misrepresentations were material; and its failure to prove that Mr. Wade submitted the applications—the government's case also failed to prove beyond a reasonable doubt that Mr. Wade was guilty of each individual count.  Each count corresponded to a separate EIDL application, which resulted in a grant or loan, and was deficient for the following reasons:

- Count 1 because the SBA's decision to award an EIDL grant had nothing to do with Troy Wade Services' revenue representations;

- Count 2 because A1 Commercial and Residential was a legitimate, South Carolina-based company that had revenue;

- Count 3 because the SBA's decision to award an EIDL grant had nothing to do with A1 Commercial's representations about its financials;

- Count 4 because the prosecution failed to introduce evidence showing whether Little Lights is or was properly accredited by the Florida Department of Education;

- Count 5 because the prosecution failed to introduce evidence showing whether TK Farms was properly licensed by the USDA; and

- Count 6 because the government failed to introduce evidence showing that Mr. Wade is the one who opened the bank accounts for Big Valley Grille & Bistro and prevented the defense from asking Marion County Growth Services about Blichton Road (where Big Valley was located).

   A.  The government's evidence was insufficient with respect to Counts 1 & 3

The grants to Troy Wade Services, LLC and A1 Commercial & Residential were for $3,000.00 ($1,000.00 per employee). SBA attorney Fazile Kapadia said EIDL grants were not based upon income, but rather were provided at $1,000.00 per employee of the applying company. Financials were not determined for grants, and Ms. Kapadia testified that both 1099 and W2 employees were considered employees for the purpose of the grant. The government did not provide any testimony or evidence that either company lacked employees or was not entitled to an SBA EIDL grant. Additionally, the jury asked a question about the requirements of an EIDL loan grant, further supporting the lack of evidence.

B. <u>The government's evidence was insufficient with respect to Count 2.</u>

A1 Commercial & Residential is a legitimate, active company based in South Carolina. *E.g.*, Def. Ex. 24 (UCC filing). It had revenue, deposits, and business expenses reflected in bank statements, IRS tax returns, UCC filings, and testimony (including from SBA attorney Fazile Kapadia).

C. <u>The government's evidence was insufficient as to Count 4.</u>

Little Lights is a legitimate and operating company. No evidence (beyond speculation) proved it was not registered with the Florida Department of Education, did not exist at the address registered with the State of Florida, or was not a valid and operational school in the State of Florida. The IRS tax returns, UCC filings, bank documents, and testimony proved its existence and other account users.

TK Farms, LLC is a legitimate and operating company. Mr. Wade was registered with the FSA, supporting its validity. Also, no evidence (beyond speculation) indicated the

14

company did not exist at its registered address or wasn't valid and operational. The IRS tax returns, UCC filings, MidFlorida Credit Union Account documents, and testimony proved its existence.

### D. The government's evidence was insufficient to prove Count 5

TK Farms, LLC is a legitimate and operating company. Mr. Wade was registered with the FSA, supporting its validity. Also, no evidence (beyond speculation) indicated the company did not exist at its registered address or wasn't valid and operational. The IRS tax returns, UCC filings, MidFlorida Credit Union Account documents, and testimony proved its existence.

### E. The government's evidence was insufficient with respect to Count 6

The government introduced no proof at trial that Mr. Wade was the one that opened the bank accounts. MidFlorida did not require a second form of identification. Further, the documents that were sent in looked faxed. And, as explained in the current motion for new trial, the Court prevented Mr. Wade's defense counsel from asking the Marion County witness about Blichton Road—where Mr. Wade's business was located.

## VI. Conclusion

For the foregoing reasons, this Court should grant the motion for judgment of acquittal.

Respectfully submitted,

*/s/ Richard C. Klugh*
Richard Klugh
Fla. Bar No. 305294
**RICHARD C. KLUGH, P.A.**
40 N.W. 3rd Street, PH1
Miami, FL 33128
Phone (305) 536-1191
rklugh@klughlaw.com

| | |
|---|---|
| */s/ Paul D. Petruzzi* | */s/ Lily M. McCarty* |
| Paul D. Petruzzi | Lily M. McCarty |
| Florida Bar. No. 982059 | Florida Bar No. 729701 |
| **LAW OFFICES OF PAUL D. PETRUZZI, P.A.** | **TODD FOSTER LAW GROUP** |
| 8101 Biscayne Blvd., PH 701 | 601 Bayshore Blvd., Ste. 615 |
| Miami, FL 33138 | Tampa, FL 33606 |
| Telephone: (305) 373-6773 | Telephone: (813) 565-0600 |
| Fax: (305) 373-3832 | Email: lmccarty@tfosterlawgroup.com |
| Email: petruzzi-law@msn.com | |
| | |
| */s/ Corey Cohen* | */s/ Diego M. Pestana* |
| Corey Cohen | Diego M. Pestana |
| Florida Bar No. 657840 | Florida Bar No. 1004436 |
| **THE LAW OFFICE OF COREY I. COHEN** | **THE SUAREZ LAW FIRM, P.A.** |
| 21 Park Lake Street | 1011 West Cleveland Street |
| Orlando, FL 32803 | Tampa, FL 33606 |
| Telephone: (407) 246-0066 | Telephone: (813) 229-0040 |
| Facsimile: (407) 246-0883 | Facsimile: (813) 229-0041 |
| Email: corey@coreycohen.com | dpestana@suarezlawfirm.com |

*Counsel for Defendant Henry Troy Wade*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2024, a copy of this document was filed electronically. Notice of this filing will be sent by operation of the Court's

electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

>*/s/ Richard Klugh*
>Richard Klugh