# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

UNITED STATES OF AMERICA

VS.                                          CASE NO. 5:22-cr-84-JA-PRL

HENRY TROY WADE

---

## MEMORANDUM AND ORDER

On Friday, September 13, 2024, on the eve of a jury trial scheduled to begin on Monday, September 16, 2024, Defendant Henry Troy Wade filed a Renewed[1] Motion to Dismiss Based on Misrepresentations to the Grand Jury (Doc. 183). I orally denied the motion on September 17 and explained that a more complete written order would follow. (*See* Mins., Doc. 192, at 2). This is that written order.

## I.    PROCEDURAL BACKGROUND

In November 2022, a grand jury indicted Defendant on six counts of wire

---

[1] Defendant had filed his first Motion to Dismiss Based on Misrepresentations to the Grand Jury (Doc. 176) a day earlier, on September 12. I denied that motion without prejudice due to Defendant's failure to comply with the conferral requirements of the Criminal Scheduling Order (Doc. 8 at 6). (*See* Order, Doc. 178).

fraud in violation of 18 U.S.C. § 1343. (Indictment, Doc. 1). The charges arose from several applications submitted to the Small Business Administration (SBA) in 2020 and 2021 for financial assistance during the COVID-19 pandemic. The applications were submitted on behalf of five businesses associated with Defendant. Ultimately, the SBA approved four loans and two grants based on the applications, and the awarded funds were disbursed to accounts at MidFlorida Bank.

The sole witness who testified before the grand jury was Secret Service Special Agent Matthew Rosado. Defendant claimed in his motion to dismiss that during the testimony "the prosecution made multiple, material misrepresentations to the grand jury about facts" and that "[w]ithout those material misrepresentations, the grand jury would not have indicted [Defendant] for the six wire-fraud charges listed in the indictment." (Doc. 183 at 1). When I heard the motion before the trial started, the parties reached stipulations regarding a few of the alleged misrepresentations, (*see* Ct.'s Ex. 1, Doc. 214-1), and Agent Rosado then testified in response to questions from defense counsel, the Government, and me, (*see* Tr., Doc. 228). After hearing argument on the motion, I denied it in open court before the jury was sworn.

## II.   LEGAL STANDARDS

A federal court may, under some circumstances, dismiss an indictment in the exercise of its supervisory power. *See Bank of Nova Scotia v. United States,*

487 U.S. 250, 254–56 (1988).  "[D]ismissal of an indictment for prosecutorial misconduct is an 'extreme sanction which should be infrequently utilized.'" *United States v. Garate-Vergara*, 942 F.2d 1543, 1550 (11th Cir. 1991) (quoting *United States v. White*, 846 F.2d 678, 693 (11th Cir. 1988)).  An indictment will be dismissed based on prosecutorial misconduct in a grand jury proceeding "only when the misconduct 'substantially influenced the grand jury's decision to indict' or when there is 'grave doubt that the decision to indict was free from the substantial influence of such violations.'"  *United States v. Cavallo*, 790 F.3d 1202, 1219–20 (11th Cir. 2015) (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

"[T]he possibility that a witness may have given false testimony before the grand jury does not automatically vitiate an indictment based on that testimony; to dismiss an indictment the district court must also find an abuse of the grand jury process such as perjury or government misconduct." *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir. 1985); *accord Garate-Vergara*, 942 F.2d at 1550.  "[A]bsent proof of government misconduct, the fact that [a witness] may have inadvertently given false testimony to the grand jury d[oes] not justify the dismissal of [an] indictment under the court's supervisory power." *DiBernardo*, 775 F.2d at 1475; *see also Bank of Nova Scotia*, 487 U.S. at 260 ("Because the record does not reveal any prosecutorial misconduct with respect to [allegedly misleading and inaccurate summaries that IRS agents provided to the grand jury just prior to the indictment], they provide no ground

for dismissing the indictment."); *United States v. Hyder*, 732 F.2d 841, 845 (11th Cir. 1984) (finding no cause to dismiss indictment where the asserted ground for dismissal was "unintentional prosecutorial misconduct").

## III. DISCUSSION

Despite the clear Eleventh Circuit precedent noted above, Defendant cited no Eleventh Circuit case law in support of his motion[2] and argued that even absent prosecutorial misconduct or perjury, dismissal of an indictment is a potential remedy where inaccurate testimony is presented to a grand jury. Defendant relied on cases from the Second Circuit Court of Appeals,[3] the Southern District of New York,[4] and the District of Puerto Rico.[5] Of course, none of those cases is binding on this Court, and even to the extent they do not conflict with the controlling authority cited in this Order, I was not persuaded that any of them supported dismissal of the indictment on the facts of the case at bar. Applying controlling precedent and judging witness credibility, I found that although Agent Rosado made some incorrect statements during his grand

---

[2] In addition to the motion itself (Doc. 183), Defendant also filed a Notice of Supplemental Authority (Doc. 190) in support of the motion. Defendant did, in his motion, cite the Supreme Court's *Bank of Nova Scotia* decision for its "substantial influence" standards for prejudice. (*See* Doc. 183 at 2).

[3] *United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983).

[4] *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991).

[5] *United States v. Martinez*, 710 F. Supp. 415 (D.P.R. 1989).

jury testimony, he did not intentionally testify falsely,[6] and no prosecutorial misconduct was shown. Additionally, I found no prejudice to Defendant in any event because the misstatements did not substantially influence the grand jury's decision to indict and I am not in doubt—let alone "grave doubt"—about whether there was such substantial influence.

As noted earlier, the charges against Defendant arose from four loans and two grants obtained from the SBA on behalf of five businesses. Specifically, the charges in the Indictment corresponded to: a $3,000 grant to Troy Wade Services LLC (Count One); a $76,000 loan to A-1 Commercial and Residential Contractors (MEP) LLC (Count Two); a $3,000 grant to A-1 Commercial and Residential Contractors (MEP) LLC (Count Three); a $147,500 loan to TK Farms LLC (Count Four); a $145,800 loan to Little Lights Early Childhood Development LLC (Count Five); and a $149,100 loan to Big Valley Grille & Bistro LLC (Count Six). Defendant raised seven arguments in his motion to dismiss regarding alleged misrepresentations by Agent Rosado about these businesses, the bank accounts into which the funds were deposited, and other facts. These arguments are addressed in turn.

### A.    Payroll Expenses

First, Defendant argued that Agent Rosado falsely testified that

---

[6] To the extent that Defendant argued that there was evidence of intent to testify falsely, I rejected that assertion.

Defendant's businesses showed no payroll expenses. Defendant cited Agent Rosado's testimony that Defendant "stated that he had multiple employees, and there's no payroll deductions or any kind of transactions of that nature." (Doc. 183 at 3 (quoting Grand Jury Tr.[7] at 12–13[8])). In his motion, Defendant claimed that this was a misrepresentation because bank records for Troy Wade LLC showed a $305 check on April 1, 2020, to one employee for 30.5 hours of work. (Doc. 183 at 3 (citing Doc. 183-2 at 4)). In open court, defense counsel referred to a few other checks in May 2020 or later—after a grant of $3,000 was disbursed to the Troy Wade LLC bank account—purporting to show payroll expenses. (*See* Doc. 183-2 at 4–5).

Agent Rosado's grand jury testimony about a lack of payroll deductions or similar expenses in the bank accounts does not support dismissal of the indictment. First of all, the expenses identified by Defendant were paid by Troy Wade LLC, not Troy Wade Services LLC—the purported entity that submitted the loan application. Second, even assuming the two businesses should be treated as one and the same, one check for wages does not reflect regular payroll

---

[7] The transcript of Agent Rosado's November 22, 2022 grand jury testimony has been filed in the record at least twice. (*See* Doc. 183-1 & Doc. 215-13). Citations in this order are to the page numbers on the transcript itself rather than the page numbers assigned in the electronic record.

[8] Defendant's motion cites "Ex. A at 3" here, meaning Doc. 183-1 at 3. (*See* Doc. 183 at 3 n.1). But the quoted material actually appears on pages 13–14 of Ex. A, which correspond to pages 12–13 of the grand jury transcript.

expenses prior to the aid application, which the Government argued was necessary to show an existing business rather than a new business created after the application. And no evidence was presented that Agent Rosado intended to deceive in this testimony or that there was any prosecutorial misconduct. Further, there was no prejudice here in light of the many other problems that were identified regarding the loan application submitted by Troy Wade Services LLC.

### B.    Approval of EIDL[9] Application for Troy Wade Services LLC

Defendant next asserted that Agent Rosado falsely informed the jury that the SBA "approved the EIDL application for Troy Wade Services." (Doc. 183 at 3 & 4). This assertion bears on Count One of the Indictment, which charged wire fraud in connection with a $3,000 grant that the SBA approved for Troy Wade Services LLC.

No material misrepresentation was made in this regard. Upon questioning by the prosecutor before the grand jury, Agent Rosado agreed that Defendant "had applied for some EIDL loans" by "electronically submit[ting] five EIDL loan applications . . . on behalf of five different businesses" and that "these applications [were] approved." (Grand Jury Tr. at 9). Defendant asserts

---

[9] EIDL is an acronym for Economic Injury and Disaster Loan. (*See* Grand Jury Tr. at 5). Even though "loan" is already part of the acronym, the loans are sometimes referred to as "EIDL loans." (*See id.* at 9). And grants are referred to as "EIDL grants." (*Id.*).

that this testimony misrepresented facts because Troy Wade Services LLC was approved only for a grant and not a loan. But as the Government points out, Troy Wade Services LLC applied for both a grant and a loan in the same EIDL application. (*See* Doc. 183-5 at 4 & Doc. 215-6 at 2 (EIDL application page on which the applicant checked the box that stated, "I would like to be considered for an advance of up to $10,000.")). It was not a false statement to say that the EIDL application was approved. Moreover, one of the very next questions the prosecutor asked Agent Rosado was, "Did [Defendant] end up receiving, from these approved applications, two EIDL grants and four EIDL loans?" (Grand Jury Tr. at 9). The prosecutor obviously—and accurately—used the term "EIDL loan applications" to refer to applications that requested both loans and grants. The fact that the SBA awarded Troy Wade Services LLC a grant, which did not have to be repaid, but denied it a loan, which would have required repayment, in no way cuts in Defendant's favor. The thrust of the colloquy before the grand jury on this point was that Troy Wade Services LLC's EIDL application was approved in some aspect. No misrepresentation was made.

## C.   Signatory Authority on Bank Accounts

Third, Defendant argues that Agent Rosado made a misrepresentation when he testified that Defendant "the only person who had a signatory authority on the [bank] accounts," which meant that he was "the only one that can use the money inside" the accounts. (*See* Grand Jury Tr. at 10). This misstatement was

8

the subject of one of the parties' three stipulations. Although it is correct that Defendant was the sole signatory on four of the five bank accounts into which loan and grant funds were deposited, the parties stipulated "that [Defendant] was not the only signatory on the MidFlorida account ending in 6801"—the account for Little Lights Early Childhood Development LLC—and that Agent Rosado's grand jury testimony that he was the sole signatory on all of the accounts was therefore false. (*See* Doc. 214-1 at 2). Indeed, there is a second signatory on that one account—Kaysheila Rains. (*See* Doc. 183-4 at 2).

During argument, the Government described this misstatement as an error—an honest mistake. Having observed Agent Rosado's demeanor and testimony, I find no intent to deceive here, nor do I find any prosecutorial misconduct. And in light of the numerous transfers of money from this account to accounts on which Defendant was indeed the sole signatory, I find no prejudice here either.

### D.   "Made Up" Employer Identification Numbers

Fourth, Defendant asserted that "[t]he prosecution misrepresented that the EINs[10] for all of [Defendant]'s businesses were 'made up.'" (Doc. 183 at 5). Although Defendant referred to "all of [Defendant]'s businesses" in the motion, Defendant's argument here actually is only about the EIN for one of the

---

[10] EIN stands for "Employer Identification Number." EINs are issued by the Internal Revenue Service.

businesses—Troy Wade Services LLC.  One of the grand jurors asked Agent Rosado about the EIN that was used on the EIDL application for Troy Wade Services LLC: "So the one that was never incorporated [Troy Wade Services LLC], he just kind of made up [the EIN]?" (Grand Jury Tr. at 34).  Agent Rosado responded, "He just made it up, yeah." (*Id.*).  Defendant contended that "Rosado's answer to the grand juror that the EIN for Troy Wade LLC [sic] was 'made up' is a misrepresentation because the EIN on the Troy Wade LLC [sic] application is in fact that company's EIN." (Doc. 183 at 6).  But Defendant's argument again misses the mark.

By way of background, there are Florida business records for an entity called Troy Wade LLC, and the Government conceded in the second of the parties' stipulations that Troy Wade LLC existed and had an EIN of 46-5212343. (*See* Doc. 214-1 at 2 ("We stipulate that Troy Wade LLC was incorporated with FEIN/EIN number 46-5212343 with the State of Florida Department of State from March 28, 2014, through September 23, 2022.")).  But the aid application on which Count One is based was filed on behalf of an entity with a claimed "Business Legal Name" of Troy Wade Services LLC—not Troy Wade LLC— using Troy Wade LLC's EIN. (*See* Doc. 215-6 at 1 (EIDL application listing "Business Legal Name" of "Troy Wade Services LLC")).  An entity called Troy Wade Services LLC has not been shown to have ever existed.  Although Defendant uses these entity names interchangeably, they are two different

names, and only one of the entities—Troy Wade LLC—has been shown to exist. Agent Rosado answering "yes" to a grand juror's suggestion that the Troy Wade Services LLC EIN was "made up" was not a material misrepresentation. I again find no perjury, no prosecutorial misconduct, and no prejudice.

### E.   Hotel Stays

Next, Defendant took issue with Agent Rosado's grand jury testimony about Defendant's expenditures on hotel stays. The prosecutor asked Agent Rosado, "Did [Defendant] have some hotel stays between 800 and 6,000 dollars?" (Grand Jury Tr. at 13). Agent Rosado responded, "Yes, ma'am." (*Id.*). Defendant contended in his motion that this "misrepresented facts" and "was false" because the most expensive hotel stay reflected in bank statements was $858.08 and there was not "any hotel purchase for $6,000.00." (Doc. 183 at 7–8). In their third and final stipulation, the parties agreed prior to Agent Rosado's in-court testimony "that a single hotel stay reflected in the bank records did not exceed $858.08." (Ct.'s Ex. 1, Doc. 214-1, at 2).

Agent Rosado and the Government explain this grand jury testimony as referring to a generalization regarding the total amount of hotel stays rather than to a single hotel stay; the total amount spent on hotel stays actually exceeded $11,000.00. With this evidence, the Government was attempting to show the grand jury that Defendant was spending EIDL money on hotel stays rather than paying employees with it. While the prosecutor's question about

hotel stays could have been more artfully worded, I find no material misrepresentation, no prosecutorial misconduct, no perjury, and no prejudice here.

### F.   Incorporation of Troy Wade Services LLC

Defendant also asserted that "[t]he prosecution misrepresented that Troy Wade Services was never incorporated." (Doc. 183 at 8).[11]  In response to questions from the prosecutor before the grand jury, Agent Rosado did testify that Troy Wade Services LLC was never incorporated[12] and "never existed." (Grand Jury Tr. at 18).   Defendant argues that this was a material misrepresentation because "Troy Wade Services was incorporated." (Doc. 183 at 9). Defendant's assertions on this point are also without merit.

As noted earlier in the discussion of Defendant's fourth argument (regarding the "made up" EIN), the parties stipulated in open court that Troy Wade LLC—not Troy Wade Services LLC—was incorporated "with the State of

---

[11]  Defendant argues again in this section of his motion about Troy Wade Services LLC receiving a grant rather than a loan. (*See* Doc. 183 at 9). This is a reiteration of Defendant's second argument, which has already been discussed and rejected in this Order.

[12] Both parties use the term "incorporated" in discussing the businesses at issue in this case, all of which are limited liability companies (LLCs) rather than corporations. Technically, LLCs are not "incorporated" but "organized"; they are formed in Florida by filing articles of organization rather than articles of incorporation. The parties are not arguing about whether the businesses are corporations on the one hand versus LLCs on the other. Instead, they are arguing about whether the businesses at issue were established as business entities of some kind in Florida or another state. In this Order, the word "incorporated" is used as the parties use it.

Florida Department of State from March 28, 2014, through September 23, 2022." (Ct.'s Ex. 1, Doc. 214-1, at 2). Defendant's assertion in his motion that "Troy Wade Services was incorporated," (Doc. 183 at 9), is not accurate. Indeed, for this proposition Defendant cites Exhibit F to his motion—a compilation of documents from the Florida Department of State regarding Troy Wade LLC, not Troy Wade Services LLC. (*See* Ex. F, Doc. 183-6). The Court has been presented with no evidence showing that an entity called Troy Wade Services LLC was ever established as a business in Florida or any other state. Agent Rosado did not make a misrepresentation regarding Troy Wade Services LLC's incorporated status.

### G.   Whether the Businesses Were in Operation

In his last argument, Defendant claimed that "[t]he prosecution misrepresented facts about whether [Defendant]'s businesses were inactive and in operation." (Doc. 183 at 9). Defendant specifically mentioned two of the businesses—Troy Wade Services LLC and A-1 Commercial and Residential Contractors (MEP) LLC—and asserted more generally that "Rosado's testimony that [Defendant]'s businesses never existed, never had business activity, and were never incorporated were false and material misrepresentations made to the grand jury." (*Id.* at 11).

Taking the general assertion first, Agent Rosado did not tell the grand jury that Defendant's "businesses never existed, never had business activity,

and were never incorporated." On the contrary, Agent Rosado told the grand jury that four of the five businesses—all except Troy Wade Services LLC—were incorporated at some point but later became inactive. Specifically, he testified that TK Farms LLC and Little Lights Early Childhood Development LLC were incorporated but had been inactive since September 2017. (Grand Jury Tr. at 18–19). And he testified that both A-1 Commercial and Residential Contractors (MEP) LLC and Big Valley Grille and Bistro LLC had been incorporated, that A-1 Commercial and Residential Contractors (MEP) LLC had been inactive since September 2019, and that Big Valley Grille and Bistro LLC was inactive from September 2019 until it was reactivated in August 2020. (*Id.* at 20–23). Thus, Defendant overgeneralized and mischaracterized Agent Rosado's testimony when he referred to more than one business in this part of his motion.

Regarding Troy Wade Services LLC, Defendant argued yet again about Agent Rosado's testimony that this entity was never incorporated and "never existed." (Doc. 183 at 10 (citing Grand Jury Tr. at 18)). The Court has already rejected the contention that this testimony was false in discussing Defendant's fourth and sixth arguments. The fact that Troy Wade LLC existed does not make it false to say that Troy Wade Services LLC never existed when no evidence has been presented that an entity by that name did in fact exist.

And as for A-1 Commercial and Residential Contractors (MEP) LLC, Defendant argued that this "was an active and registered company with the

State of South Carolina, the state listed on the [EIDL] application as the business address." (Doc. 183 at 11). Again, the transcript reflects that Agent Rosado told the grand jury that this entity was incorporated but "inactive since September of 2019." (Grand Jury Tr. at 20). Defendant suggests that Agent Rosado should have reviewed South Carolina business records to confirm an ongoing and active business. (*See* Doc. 183 at 11).

But Defendant has not identified any evidence that Agent Rosado made an intentional false statement about A-1 Commercial and Residential Contractors (MEP) LLC. To the extent Defendant attempted to establish that this business was authorized to do business in South Carolina because it was registered there as a foreign LLC (organized in Florida), the Florida records upon which Agent Rosado relied show that the company has been inactive in Florida since September 2019; thus, after that date there was no foreign LLC upon which to base any South Carolina operations. Defendant also argued that some deposits made into A-1 Commercial and Residential Contractors (MEP) LLC's bank account suggested an ongoing business. But even if Agent Rosado saw those deposits in the bank records and regarded them as business transactions, to Agent Rosado's knowledge that business was not authorized to operate after September 2019. There is no evidence of prosecutorial misconduct or perjury regarding these deposits. Additionally, I find no prejudice.

## IV.   CONCLUSION

For these reasons, Defendant's Renewed Motion to Dismiss Based on Misrepresentations to the Grand Jury (Doc. 183) was denied.

**DONE** and **ORDERED** on November 25, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Attorney
Counsel for Defendant
Henry Troy Wade