UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

VS.                                    CASE NO. 5:22-cr-84-JA-PRL

HENRY TROY WADE

---

## ORDER

This case is before the Court on Defendant's post-trial motions for judgment of acquittal (Acquittal Motion) and new trial (New Trial Motion). (Docs. 235 and 236).  Based on the Court's review of the parties' submissions, both motions must be denied.

## I.    BACKGROUND

Defendant, Henry Troy Wade, was charged by an indictment with six counts of wire fraud in violation of 18 U.S.C. § 1343.  (Indictment, Doc. 1).  The Government alleged in the Indictment that Defendant made false representations on Economic Injury Disaster Loan (EIDL) applications in order to obtain loans and grants that he was ineligible for.  The applications were submitted on behalf of five businesses associated with Defendant, and ultimately the Small Business Administration (SBA) approved four loans and two grants based on the applications.  A jury trial was held from September 16–24, 2024, (see Docs. 191, 192, 195, 197, 199, 200, 202), and Defendant was found guilty on all counts, (see Doc. 211).

Following the jury's verdict, Defendant filed the Acquittal Motion and the New Trial Motion. In the Acquittal Motion, Defendant requests that the Court enter a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure because of a "lack of proof sufficient to meet the government's burden." (Acquittal Motion at 1). Specifically, Defendant argues that: (1) the Government's fraud theory is legally deficient; and (2) the Government did not present sufficient evidence that Defendant made material misrepresentations to the SBA. Defendant alternatively requests that the Court grant a new trial pursuant to Rule 33, claiming that the "interest of justice" requires it because: (1) Secret Service Special Agent Matthew Rosado gave false testimony to the grand jury; (2) the Government constructively amended or materially varied from the Indictment; (3) the Government elicited improper expert testimony from a lay witness; (4) the Court wrongly prevented Defendant from presenting a defense; (5) the Court wrongly rejected Defendant's proposed jury instructions; (6) the Court wrongly administered the *Allen*[1] charge; and (7) the cumulative effect of these alleged errors warrants a new trial. The Government responded in opposition to the motions, (Docs. 239, 240), to which Defendant filed a reply, (Doc. 244).

---

[1] *See Allen v. United States*, 164 U.S. 492 (1896).

## II.    Legal Standards

### A.    Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c)(2) authorizes the Court, "where appropriate, to enter a judgment of acquittal following a guilty verdict." *United States v. Estrada-Lopez*, 259 F. Supp. 3d 1358, 1362 (M.D. Fla. 2017). "A motion for judgment of acquittal under Rule 29 'is a direct challenge to the sufficiency of the evidence presented against the defendant.'" *Id.* (quoting *United States v. Aibejeris*, 28 F.3d 97, 98 (11th Cir. 1994)). "In considering a motion for the entry of judgment of acquittal under [Rule 29(c)], a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *Id.* (quoting *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)).

### B.    Motion for New Trial

Federal Rule of Criminal Procedure 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "'When considering a motion for a new trial, the district court may weigh the evidence and consider the credibility of the witnesses.'" *United States v. Brown*, 934 F.3d 1278, 1297 (11th Cir. 2019) (quoting *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015)). "A motion for a new trial based on the weight of the evidence is 'not favored' and is reserved for 'really exceptional cases.'" *Id.* (quoting *United States v. Martinez*,

763 F.2d 1297, 1313 (11th Cir. 1985)). "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Martinez*, 763 F.2d at 1312-13 (citing *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980)). "[T]o warrant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Witt*, 43 F.4th 1188, 1194 (11th Cir. 2022) (quoting *Martinez*, 763 F.2d at 1313). Ultimately, "motions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999).

## III.    DISCUSSION

### A.    Motion for Judgment of Acquittal

#### 1.    *The Government's Fraud Theory*

The federal wire fraud statute, 18 U.S.C. § 1343, criminalizes "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," using wires. The wire fraud statute extends only to "money" or "property"; it does not reach schemers who merely fail to act in an "honest and faithful" manner. *Carpenter v. United States*, 484 U.S. 19, 25 (1987). For a conviction under the wire fraud statute to be sustained, the Government must have proved that the defendant "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or 'cause[d]' the use of . . . wires for the purpose of

4

executing the scheme or artifice." *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) (quoting *United States v. Ward,* 486 F.3d 1212, 1222 (11th Cir. 2007)).

In the Acquittal Motion, Defendant argues that there could be no scheme to defraud because his actions did not target a "property" interest as required by § 1343. Specifically, Defendant contends that any misrepresentations on his EIDL applications implicated only the SBA's "regulatory preferences governing eligibility and awarding of loans," (Acquittal Motion at 5–6), which are not protected by the wire fraud statute, *see Cleveland v. United States*, 531 U.S. 12, 19–20 (2000). Defendant argues that "the government introduced no evidence of any intention to cause economic injury to the SBA, and no evidence that the intended bargain to which the SBA was induced to enter was financially harmful to the SBA." (Acquittal Motion at 4–5). In short, Defendant argues that the "government needed to prove that Defendant devised a scheme to cause some pecuniary harm to the SBA, and it failed to do so here." (*Id.* at 6).

Defendant relies principally on the Eleventh Circuit's decision in *United States v. Takhalov* to support the proposition that the SBA was not harmed and merely received what it bargained for. 827 F.3d 1307 (11th Cir. 2016). *Takhalov* involved defendants who hired women to pretend to be tourists, identify visiting businessmen, lure them into defendants' bars and nightclubs, and dupe them into purchasing exorbitantly priced beverages. *Id.* at 1310–11. The defendants

were convicted under the wire fraud statute, U.S.C. § 1343, but the Eleventh
Circuit vacated those convictions. The *Takhalov* court explained that a "'scheme
to defraud[]' . . . refers only to those schemes in which a defendant lies about
the nature of the bargain itself." *Id.* at 1313 (quoting § 1343). "[Section] 1343
forbids only schemes to defraud, not schemes to do other wicked things, *e.g.*,
schemes to lie, trick, or otherwise deceive." *Id.* at 1310. That a defendant
merely "induce[d] [the victim] to enter into [a] transaction" that he otherwise
would have avoided is therefore "insufficient" to show wire fraud, because a
"scheme to defraud" has not occurred unless the schemer "intend[s] to harm the
person he intends to trick." *Id.* at 1313. The *Takhalov* court determined that
the businessmen got exactly what they bargained for—a drink with a woman at
a club—and therefore no scheme to defraud occurred. *Id.* at 1313; *see also*
*United States v. Waters*, 937 F.3d 1344, 1354 (11th Cir. 2019) ("In a scheme to
deceive, the victim of the lie hasn't been harmed because he still received what
he paid for. But in a scheme to defraud, the victim has been harmed because
the misrepresentation affected the nature of the bargain, either because the
perpetrator lied about the value of the thing . . . or because he lied about the
thing itself . . . .").

The Eleventh Circuit again addressed this issue in *United States v.*
*Wheeler*, 16 F.4th 805 (11th Cir. 2021). In *Wheeler*, the defendants
misrepresented to investors that a company had profited millions of dollars, was

closely associated with high profile companies and executives, and would soon be listed on a major stock exchange. *Id.* The *Wheeler* court determined that the misrepresentations involved "essential characteristics of the stock that would alter the nature of the bargain" and thus "the evidence provided a basis for a reasonable jury to conclude that [the defendants] schemed to defraud investors" under the wire fraud act. *Id.* at 820–21.

Here, the Court finds that obtaining the government's property—to the tune of $524,400—was precisely the object of Defendant's fraudulent scheme. Defendant has not established that the grant and loan proceeds he received from the SBA were not traditional property interests. The fact that Defendant's scheme had the effect of depriving the SBA of its ability to implement its regulatory preferences was only incidental to Defendant's goal of obtaining money he was not entitled to. This case does not merely implicate a "regulatory preference," nor does it concern only an "intangible interest" in fair dealing. *See Cleveland*, 531 U.S. at 370. Thus, the Court finds that the Government's fraud theory is legally sound in this case. *See, e.g., United States v. Vernon*, 593 F. App'x 883, 889 (11th Cir. 2014) (finding that the defendant's receipt of loan proceeds implicated a traditional property interest under § 1343).

    2.   *Sufficiency of Wire Fraud Evidence*

Defendant also challenges whether the Government presented sufficient evidence that: (1) misrepresentations were made on the EIDL applications; (2)

the misrepresentations were material; and (3) Defendant was responsible for making the material misrepresentations.

To establish wire fraud, the Government must show that the defendant: "(1) participated in a scheme or artifice to defraud; (2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud." *United States v. Machado*, 886 F.3d 1070, 1082–83 (11th Cir. 2018) (quoting *United States v. Martin*, 803 F.3d 581, 588 (11th Cir. 2015)). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Svete*, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009), and *United States v. Hasson*, 333 F.3d 1264, 1270–71 (11th Cir. 2003)). "A misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed.'" *Id.* (citing *Hasson*, 333 F.3d at 1271). And a jury may infer a defendant's intent to defraud based on circumstantial evidence, such as whether a defendant profited from the fraud. *See id.* at 1301; *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011); *Bradley*, 644 F.3d at 1240. In a motion for judgment of acquittal, the Court must make "[a]ll credibility choices . . . in support of the jury's verdict." *United States v. Williams*, 390 F.3d 1319, 1323

(11th Cir. 2004) (citing *United States v. Greer*, 850 F.2d 1447, 1450 (11th Cir. 1988)).

### a.     Evidence of Misrepresentations

First, Defendant challenges the evidence for his conviction on Count I, which pertains to a grant to Troy Wade Services, LLC that was deposited into the MidFlorida Credit Union account of Troy Wade LLC.[2]  Defendant argues that the "government did not provide any testimony or evidence that either company lacked employees or was not entitled to an SBA EIDL grant." (Acquittal Motion at 14).  Defendant also argues that a jury question about EIDL application qualifications suggests that the evidence in this case was insufficient.  The Government responds that (1) Defendant made two separate EIDL applications for Troy Wade Services, LLC that differed as to the gross revenue reported, the cost of goods sold in the prior twelve months, and the number of employees, (*see* Doc. 217-1; 217-8); (2) a representative of the Florida Department of Revenue (FDOR) testified that Troy Wade Services, LLC was not registered with the FDOR; (3) records from the Florida Department of Business and Professional Regulation indicate that Troy Wade Services, LLC was not licensed to perform HVAC services in Florida,  (Doc. 217-41); and (4) exhibits

---

[2] There are Florida business records for an entity called Troy Wade LLC.  (*See* Doc. 214-1 at 2).  But the aid application on which Count One is based was filed on behalf of an entity with a claimed "Business Legal Name" of Troy Wade Services LLC, not Troy Wade LLC.  (*See* Doc. 215-6 at 1).

introduced from the Internal Revenue Service (IRS) suggested that Troy Wade Services, LLC had no tax filings for its reported employees, (Doc. 217-30).

The Court finds there is sufficient evidence that misrepresentations were made on the EIDL applications for Troy Wade Services, LLC. Moreover, the Court rejects Defendant's argument that the jury question indicates a lack of sufficient evidence, and Defendant did not cite any legal authority or explain his reasoning. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (rejecting a "conclusory argument" because the party advancing it "d[id] not explain [its] legal basis" or cite "legal authority to support it").

Second, Defendant argues as to Counts II and III that A1 Commercial & Residential Contractors is a legitimate company based in South Carolina and that the Government failed to prove otherwise. The Government responds that there were two EIDL applications for this business that contained different financial information and that exhibits from the IRS showed that no tax filings were made for the reported employees. (Doc. 217-2; Doc. 217-10; Doc. 217-30). And the Government showed that the proceeds the business received from the SBA were then transferred to Defendant's other business and personal bank accounts. (Doc. 217-12; 217-13; Doc. 217-17). Thus, the Court finds that the evidence was sufficient for the jury to find that misrepresentations were made on the EIDL applications for A1 Commercial & Residential Contractors.

Defendant also challenges his conviction on Count IV of the Indictment, arguing that TK Farms LLC was a legitimate company that is registered with the Farm Service Agency and that UCC filings, MidFlorida Credit Union Account documents, and testimony showed that it qualified for the EIDL proceeds. The Government again responds that two EIDL applications were submitted for this business that contained completely different financial information. (Doc. 217-3; Doc. 217-11). Moreover, the Government presented evidence that the property consisted only of 3.79 acres and two mobile homes and did not contain a farm. (Doc. 217-31; Doc. 217-32). There was also trial testimony that Defendant lived on the property in 2020 but that the only changes he made to the property were to install a bigger closet and a bathroom and that no farm ever existed on the property. Additional trial testimony indicated that cattle were not allowed to be present on the property due to zoning laws. (*Id.*). And the thirteen purported employees of TK Farms LLC were not reported to the FDOR or the IRS. (*Id.*; Doc. 217-29; Doc. 217-30). Thus, the Court finds that adequate evidence of misrepresentations was presented at trial.

Next, Defendant challenges the evidence for his conviction as to Count V, which relates to Little Lights Early Childhood Development LLC. Defendant posits that this business was a school and that IRS returns, UCC filings, bank documents, and trial testimony proved its existence. The Government responds

11

that there were two EIDL applications submitted for this business with disparate business information. (Doc. 217-4; Doc. 217-9). For example, the approved application listed the business as "Entertainment Services," while the unapproved application listed the business as "Educational Services." (*See id.*). Following the Indictment, Defendant filed a tax return in which this business was designated as a daycare facility, (Doc. 217-29 at 14), but trial testimony from a representative of the Florida Department of Children and Families indicated that this business was not licensed as a daycare facility. Moreover, property appraisal records were introduced indicating that the business's Marion County, Florida address did not exist. (Doc. 217-4; Doc. 217-9; Doc. 217-34). And the business's nine purported employees were not reported to the FDOR or the IRS. (Doc. 217-29; Doc. 217-30). Finally, after the SBA disbursed the loan to Little Lights on August 4, 2020, the proceeds were transferred to three of Defendant's personal and other business accounts. (Doc. 217-12; Doc. 217-14; Doc. 217-15; Doc. 217-17; Doc. 217-18). Thus, the Court finds that the evidence is sufficient to support the existence of misrepresentations regarding the Little Lights Early Childhood Development LLC EIDL application.

Finally, Defendant challenges the sufficiency of the evidence for Count VI, which pertains to the loan awarded to Big Valley Grille & Bistro LLC. Three EIDL applications were submitted for this business, only two of which contained the same financial information. (*See* Doc. 217-5; Doc. 217-6; Doc. 217-7). During

trial, the longtime owner of the property located at the business address testified that no restaurant had ever been run on the property. (*See* Doc. 217-33). Moreover, a Marion County zoning department witness testified that it would have been illegal to run a restaurant on this property. FDOR and IRS exhibits also indicated that the business never registered its purported thirteen employees. (Doc. 217-5; Doc. 217-29; Doc. 217-30). And the SBA corresponded with Defendant after the application was submitted, and Defendant provided additional false documentation. (Doc. 217-5 at 98–100). The Court finds that the evidence is sufficient to show misrepresentations were made on these EIDL applications.

### b.    Materiality of the Misrepresentations

Defendant posits that the Government failed to show that the misrepresentations were material. Defendant recounts that each of the applications at issue had six initial eligibility questions and three initial disqualifying questions, and he argues that none of these rendered Defendant's companies ineligible for the requested EIDL relief. Defendant states that none of these "core questions" addressed when the businesses were in operation or what the business addresses were and that these "core questions" were all that were material on the EIDL applications. (Acquittal Motion at 12). Defendant argues that this Court "cannot determine whether the jury reached a unanimous verdict as to which misrepresentations the government proved

beyond a reasonable doubt; nor can it determine whether those misrepresentations were indeed material." (Acquittal Motion at 12–13). The Government responds that the misrepresentations made in the EIDL applications as to each businesses' financial information were material as to whether a grant or loan was issued. At trial, the Government's SBA witness testified that the SBA relied on the financial information reported on the EIDL applications when deciding whether to issue a grant or loan and in what amount.

The Court finds there is sufficient evidence that the misrepresentations made to the SBA were material. As stated previously, "[a] misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed.'" *Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *Hasson*, 333 F.3d at 1271). The Eleventh Circuit has clarified that "[b]ecause the issue is whether a statement has a tendency to influence or is capable of influencing a decision, and not whether the statement exerted actual influence, a false statement can be material even if the decision maker did not actually rely on the statement." *United States v. Neder*, 197 F.3d 1122, 1128 (11th Cir. 1999) (citing *United States v. Gregg*, 179 F.3d 1312, 1315 (11th Cir. 1999)). Defendant's argument that the "core questions" on the application were all that was material is unavailing—there is sufficient evidence that the fraudulent information on the EIDL applications

was capable of influencing whether the SBA approved the grant or loan for the businesses.      This   is   sufficient   evidence   of   the   materiality   of   the misrepresentations.

### c.      Defendant's Involvement in the Scheme

Defendant next asserts that the Government failed to demonstrate that Defendant personally submitted the EIDL applications.  (*See* Acquittal Motion at 8).  During trial, Defendant argued to the jury that eight other individuals may have had access to Defendant's personal and financial information and could have submitted the EIDL applications without Defendant's knowledge. Defendant further argues that because all the applications were submitted online, no evidence exists demonstrating that Defendant personally submitted these applications.

The Government responds that, of the eleven applications at issue in this case, eight of them were submitted from Defendant's home.  (Doc. 240 at 13). Each application contained Defendant's personal information, including his phone number and social security number, and all the loan proceeds went into bank accounts that Defendant had opened and controlled.  Defendant was the sole signatory on all these bank accounts except for the Little Lights Early Childhood Development LLC bank account, but even the proceeds disbursed to the Little Lights account were then transferred to Defendant's other accounts. The evidence also suggested Defendant used these SBA proceeds to purchase

items from Amazon.com and pay his rent. (*See* Doc. 217-19). And Defendant filed a 2019 tax return after he was indicted in 2022 in an attempt to legitimize these businesses. (Doc. 217-29). The Government argues this is evidence Defendant committed the fraud because a fraudster using Defendant's identity would have wanted Defendant to be blamed for it and would not have acted to cover it up.

In a motion for acquittal, the Court must make "[a]ll credibility choices . . . in support of the jury's verdict." *Williams*, 390 F.3d at 1323. The Court finds that the evidence is sufficient for the jury to have found that Defendant submitted the EIDL applications at issue. A judgment of acquittal is not warranted because "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 1324.[3] Accordingly, the Acquittal Motion must be denied as to all counts.

## B.    Motion for New Trial

Next, the Court turns to Defendant's Motion for a New Trial under Federal Rule of Criminal Procedure 33. Defendant makes several arguments for a new trial that will be addressed in turn.

---

[3] Defendant also moves for acquittal on the grounds that the Government "improperly argued a joint culpability theory in closing." (Acquittal Motion at 10). This matter will be taken up in the discussion of Defendant's New Trial Motion, *infra* part B.

1.    *Agent Rosado's Grand Jury Testimony*

First, Defendant argues the Court must grant a new trial based on misrepresentations that Secret Service Special Agent Matthew Rosado made to the grand jury. The Court has addressed Defendant's arguments in the Order denying Defendant's Renewed Motion to Dismiss Indictment Based on Misrepresentations to the Grand Jury. (Doc. 238). Defendant has not provided anything new that the Court did not already address in that Order. Thus, the Court finds that Defendant did not carry his burden of showing that this issue makes this case "really exceptional" warranting the grant of a new trial. *Brown*, 934 F.3d at 1297.

2.    *Constructive Amendment or Variance From the Indictment*

Defendant argues that the Government constructively amended or varied from the Indictment when the Government stated during closing argument that "[e]ven if you do not think that [Defendant] did this all by himself, you can still find him guilty if he participated in it." (Doc. 230 at 76, 78). Defendant argues that the Government's reference to "participation" constructively amended or varied from the Indictment because Defendant interprets the Indictment as alleging that "Mr. Wade—*and only Mr. Wade*—committed the asserted fraud." (New Trial Motion at 7 (emphasis in original)). Defense counsel lodged a contemporaneous objection to the Government's statement, which the Court overruled. (Doc. 230 at 76).

17

The Court provided the jury with the following Eleventh Circuit pattern instruction listing the elements of the offense of wire fraud:

> (1) the Defendant knowingly devised **or participated** in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;
>
> (2) the false pretenses, representations, or promises were about a material fact;
>
> (3) the Defendant acted with the intent to defraud; and
>
> (4) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

Eleventh Circuit Pattern Jury Instructions, O51 (revised April 2024); (Doc. 207 at 11) (emphasis added). Before trial, Defendant proposed that the Court use this instruction. (*See* Doc. 153 at 18–20). Despite the reference to "participation" in this instruction, Defendant argues that a constructive amendment or variance from the Indictment occurred because the Government stated in closing argument that the jury could convict Defendant if it found that he "participated" in the scheme to defraud.

Two related but distinct issues can arise upon a deviation from an indictment. First, a "constructive amendment" occurs when the "essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Keller,* 916 F.2d 628, 634 (11th Cir. 1990). Second, a "variance"

occurs "when the evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (quoting *United States v. Caporale*, 806 F.2d 1487, 1499 (11th Cir. 1986)). "The distinction between an amendment and a variance is important in that an amendment is per se reversible error, while a variance requires the defendant to show that his rights were substantially prejudiced by the variance in order to be entitled to a reversal." *Keller*, 916 F.2d at 633 (citing *United States v. Figueroa*, 666 F.2d 1375, 1379 (11th Cir. 1982)); *see also United States v. Cancelliere,* 69 F.3d 1116, 1121 (11th Cir. 1995).

First, Defendant argues that the Government's reference to "participation" amended the Indictment by broadening the possible bases for conviction. *See id.* at 634. The Eleventh Circuit has explained that "[c]onviction under the wire fraud statute requires that the defendant (1) intentionally participated in a scheme or artifice to defraud another person of money or property and (2) used or caused the use of interstate wires to execute the scheme or artifice." *United States v. Edwards*, 526 F.3d 747, 760 (11th Cir. 2008) (citing *Ward*, 486 F.3d at 1222); *see also Bradley*, 644 F.3d at 1238. "Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *Bradley,* 644 F.3d at 1239 (quoting *United States v. Naranjo,* 634 F.3d 1198, 1207 (11th Cir. 2011)). Prevailing Eleventh Circuit caselaw and the pattern jury instructions provide that

participation in a scheme to defraud is what the law requires to sustain a conviction under the wire fraud statute. Defendant's arguments to the contrary are rejected. *See also United States v. Cin Mun Tuang*, 773 F. App'x. 593, 594 (11th Cir. 2019) ("The government's closing argument did not constructively amend the indictment because it merely repeated the jury instructions' correct statement of the law.").

Next, Defendant calls for a new trial because the jury was never instructed on aiding and abetting. *See United States v. Martin*, 747 F.2d at 1404, 1407 (11th Cir. 1984). Defendant cites *United States v. Dillard* to support the proposition that a judgment of acquittal is warranted where the jury was not instructed as to aiding and abetting. No. CR 2:21-00029-K-B, 2021 WL 5985002, at *4 (S.D. Ala. Dec. 16, 2021). In *Dillard*, the court found that acquittal was warranted on a witness intimidation charge because the jury was not instructed on aiding and abetting and "there was no evidence that [the defendant] personally acted to intimidate the witness." *Id.* Here, the jury found that there was sufficient evidence to convict Defendant for wire fraud based on the standard set forth in the Eleventh Circuit pattern instructions. Defendant has not shown that separate evidence and instructions for aiding and abetting were necessary in this case. *See also United States v. Tucker*, 402 F. App'x. 499, 502 (11th Cir. 2010).

Defendant argues at length that the Eleventh Circuit pattern jury instructions impermissibly deviate from the plain text of the wire fraud statute by allowing convictions based on a defendant's participation in a scheme to defraud. (*See* New Trial Motion at 12–15). However, if the Eleventh Circuit's pattern instruction misstates the law, it is a mistake of Defendant's own making because Defendant proposed the Eleventh Circuit pattern instruction. *See United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021) (refusing to review a defendant's challenge to jury instructions where the defendant "propos[ed] the exact language that the district court adopted" and therefore "invited any purported error"). For the reasons set out above, the Court finds that this instruction did not amend or vary the Indictment.

Defendant also cites *Keller* for the proposition that it is erroneous to instruct a jury that it may convict a defendant for participating in the scheme of any unnamed person. 916 F.2d at 632. However, the portion of *Keller* cited by Defendant has no bearing on the facts before this Court because in *Keller*, the defendant was indicted for conspiring with a person specifically identified by name. *Keller* is distinguishable because in this case Defendant was not indicted for conspiracy and no other individuals were listed by name. The Government's statement during closing argument was an accurate statement of the law and the jury was properly instructed on the essential elements of wire fraud.

3.    *Improper Expert Testimony*

Defendant next claims that a new trial is warranted because the Court allowed the Government's SBA witness, Fazile Kepadia, to "improperly conflate lay and expert witness testimony." (New Trial Motion at 16). Defendant argues the Government elicited improper testimony from Ms. Kepadia when it asked her if the SBA notes in the EIDL applications indicated whether the SBA suspected identity theft. (New Trial Motion at 16–17). Defendant claims this was an improper inquiry because the Government's questioning went beyond Ms. Kepadia's personal observations and instead called for Ms. Kepadia to opine as to whether identity theft occurred. Defendant claims this error was prejudicial because identity theft was central to Defendant's defense.

"The district court must ensure that expert testimony under Rule 702 does not come in under the guise of lay opinion testimony under Rule 701." *United States v. Graham*, No. 19-10332, 2024 WL 4929254, at *25 (11th Cir. Dec. 2, 2024) (citing *United States v. Hawkins*, 934 F.3d 1251, 1265–66 (11th Cir. 2019). Indeed, "it is error to admit opinion testimony of lay witnesses based upon specialized knowledge." *United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006). A lay witness's presentation "as a dual fact-expert witness without further demarcation or explanation to the jury" constitutes error. *Hawkins*, 934 F.3d at 1266 (quoting *United States v. Rios*, 830 F.3d 403, 416 (6th Cir. 2016)). Such testimony "may come dangerously close to invading the province of the

jury." *United States v. Emmanuel*, 565 F.3d 1324, 1335–36 (11th Cir. 2009) (citing *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003)).

During trial, Ms. Kepadia testified that the SBA agents who review EIDL applications are trained to make annotations if they suspect identity theft. Ms. Kepadia reviewed the pertinent SBA records in this case and testified that the SBA records at issue did not contain any SBA annotations regarding suspected identity theft. The Government's inquiry solicited factual testimony from Ms. Kepadia and did not call for or result in Ms. Kepadia improperly interpreting the evidence. Given her experience with the SBA and her review of all the records in this case, the Court finds that it was not error to allow Ms. Kepadia to render this testimony. *See, e.g., Graham*, 2024 WL 4929254, at *25.

### 4. *Preventing a Defense*

Defendant claims the Court erred by prohibiting defense counsel from inquiring of expert witness Tom Simon as to caregiver fraud and identity theft. Mr. Simon, a former special agent with the Federal Bureau of Investigation, testified about the ways in which Defendant may have been vulnerable to identity fraud and caregiver fraud. Defendant's motion makes only a vague allegation that defense counsel was not permitted to ask Mr. Simon certain questions without explaining what those questions were, whether the proposed questions would have resulted in legally admissible evidence, or how this affected Defendant's presentation of his defense.

It is axiomatic that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)). But this principle is cabined by the "broad latitude" courts possess to "exclud[e] evidence from criminal trials." *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Here, the Court is unconvinced that a new trial is in the interest of justice on this basis.

Defendant also claims that the Court wrongly prevented defense counsel from introducing evidence regarding the locations of Defendant's businesses. Defendant notes that Government witness Ken Weyrauch of Marion County Growth Services offered testimony that could have led the jury to believe that Defendant provided incorrect addresses for his businesses on the EIDL applications. Defendant claims that defense counsel attempted to introduce additional records from the Marion County Property Appraiser's Office that the Court wrongly precluded. Defendant has not specified what these records were or explained how they were admissible into evidence. Nor has Defendant demonstrated that he was prevented from effectively presenting his defense based on their exclusion. Thus, the Court finds that a new trial is not warranted on this ground.

### 5.    *Jury Instructions*

Defendant requested the following "theory of defense" jury instruction:

> [Defendant], through his counsel, has introduced evidence to support his theory of the case. [Defendant]'s theory of the case is that someone other than [Defendant] submitted the EIDL loan applications to the SBA for his businesses without [Defendant]'s approval or consent.
>
> [Defendant] has no burden to prove his theory of the case. The government always has the burden of proving [Defendant]'s guilt beyond a reasonable doubt. If there is a reasonable doubt as to the identification of the defendant as the person who submitted the EIDL loan applications, then you must acquit.

(Doc. 153 at 22). Defendant claims that the record evidence supports this instruction and that it is "particularly warranted in light of the government's improper closing argument." (New Trial Motion at 21).

"A district court has broad discretion in choosing the language of jury instructions." *United States v. Davis*, 779 F.3d 1305, 1311 (11th Cir. 2015) (citing *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1276 (11th Cir. 2008)). However, "[a] trial court may not refuse to charge the jury on a specific defense theory when the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense." *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995) (citing *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982)). "The refusal to give a requested jury instruction is an abuse of discretion if the instruction 'is a substantially correct statement of the law'; 'was not covered by the charge actually given'; and 'dealt with some point in the trial so important that failure

to give the instruction seriously impaired the defendant's ability to present an effective defense.'" *United States v. Macrina*, 109 F.4th 1341, 1351 (11th Cir. 2024) (quoting *United States v. Focia*, 869 F.3d 1269, 1282 (11th Cir. 2017)).

The Court finds that the substance of Defendant's proposed instruction was adequately covered by the Court's instructions on the Government's burden of proof regarding the offense of wire fraud. (Doc. 207 at 3, 11–13). Moreover, Defendant's proposed instruction is "essentially a summary of his defense theory and would have required the district court to advocate on his behalf." *United States v. Roland*, 737 F. App'x 484, 505 (11th Cir. 2018); *see also United States v. Barham*, 595 F.2d 231, 244–45 (5th Cir. 1979)[4] (affirming district court's failure to give "theory of defense" jury instruction when "the requested instruction was more in the nature of a jury argument than a charge" and "[i]t was for defense counsel to make, not the Judge"). Thus, the Court's refusal to give this proposed instruction does not warrant a new trial.

Defendant also alleges that this Court mishandled a jury question and should have provided a "*Takhalov*-specific" jury instruction in response. (New Trial Motion at 22). During deliberations, the jury sent a note asking, "What are the legal requirements to get approved for a <u>grant</u>? Or is there an income

---

[4] Decisions of the Fifth Circuit prior to October 1, 1981, are binding on the courts of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

requirement." (Doc. 209) (emphasis in original). Because this jury question pertained to the evidence presented at trial, the Court instructed the jury that it must rely on its own recollection. *See United States v. Delgado*, 56 F.3d 1357, 1370 (11th Cir. 1995). Defendant's contention that the jury question "indicated a fundamental misunderstanding of the essential elements of fraud" is speculative and unsupported by the record in this case. (New Trial Motion at 22). The *"Takhalov*-specific instruction" that Defendant now argues was necessary would have been properly rejected as "improper partisan argument." *Roland*, 737 F. App'x at 502.

> 6.    Allen *Charge*

During deliberations, the jury informed the Court that "[w]e cannot agree on one of the counts. What is our next step?" (Doc. 231 at 10). The Court suggested to counsel that the Court read the *Allen* charge to the jury, to which defense counsel objected. (*Id.*); *see Allen v. United States*, 164 U.S. 492 (1896). The *Allen* charge "instructs a deadlocked jury to undertake further efforts to reach a verdict." *United States v. Chigbo*, 38 F.3d 543, 544 n. 1 (11th Cir. 1994) (citing *Allen*, 164 U.S. 492). *Allen* charges are permissible in the Eleventh Circuit. *See id.*; *United States v. Rey*, 811 F.2d 1453, 1460 (11th Cir. 1987). But when giving the *Allen* charge, the district court must not "coerce any juror to give up an honest belief." *Rubinstein v. Yehuda*, 38 F.4th 982, 996 (11th Cir. 2022) (quoting *United States v. Anderson*, 1 F.4th 1244, 1269 (11th Cir. 2021)).

Defendant requested the Court to inquire as to whether the jury had reached a verdict on the other counts, the Court obliged, and the jury confirmed that they could not agree on one of the counts. (Doc. 231 at 14–15). After consulting with defense counsel at length as to the next steps the Court should take, the Court read an instruction to the jury that defense counsel assisted in preparing. (*Id.* at 17–18). That instruction was as follows:

> I'm going to ask that you continue your deliberations in an effort to agree on a verdict and dispose of this case. And I have a few additional comments I'll make for you to consider as you do so. This is an important case. The trial has been expensive in time, effort, money, and emotional strain on both the defense and the prosecution. If a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a small number of you are in favor of an acquittal, the rest of you should ask yourselves again, and most thoughtfully, whether you should accept the weight and sufficiency of the evidence that fails to convince your fellow jurors beyond a reasonable doubt. Remember at all times that no juror is expected to give up an honest belief about the weight and effect of the evidence. But after fully considering the evidence in the case, you must agree on a verdict, if you can. You must also remember that if the evidence fails to establish guilt beyond a reasonable doubt, the defendant must have the unanimous verdict of not guilty. You should not be hurried in your deliberations, and you should take all the time you feel is necessary. I now ask that you retire once again and continue your deliberations with these additional comments in mind. Apply them in conjunction with all the other instructions I've previously given you.

(*Id.*). The Court finds that this charge was neither unduly coercive nor otherwise improper and, as noted, defense counsel contributed to its wording.

### 7.    *Cumulative Effect of Errors*

Having found that Defendant failed to establish the existence of any errors during these proceedings, the Court rejects the argument that the cumulative effect of any alleged errors in this case warrants a new trial. "If there are no errors or a single error, there can be no cumulative error." *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (quoting *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001)).

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** and **ADJUDGED** as follows:

1.    Defendant's Motion for Judgment of Acquittal (Doc. 235) is **DENIED**.

2.    Defendant's Motion for a New Trial (Doc. 236) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on January 14, 2025.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney

United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Henry Troy Wade