UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 5:22-cr-84-JA-PRL

HENRY TROY WADE

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RELIEF

The United States of America, through the undersigned Assistant United States Attorney, responds to Defendant's Motion for Relief that was filed on May 27, 2025. Doc. 305. The defendant's motion to vacate the judgment should be denied because the interests of justice do not require it.

### I.    Procedural background

In the defendant's motion, he seeks relief from his judgment under to Rule 33, Federal Rules of Criminal Procedure. Doc. 305. The defendant argues the following grounds for relief:

1. The United States elicited improper expert testimony from a lay witness;

2. The Court wrongfully rejected the defendant's proposed jury instructions;

3. The United States constructively amended or materially varied from the Indictment;

4. Special Agent Matthew Rosado gave false testimony to the grand jury;

5. The Court wrongfully sustained an objection before it was made;

6. the Court wrongfully prevented the defendant from presenting a defense by

not allowing certain evidence to be introduced through witnesses Tom Simon and Ken Weyrauch;

7. There is insufficient evidence of guilt; and

8. The United States engaged in prosecutorial misconduct.

*See id.*

Most of these grounds were argued in Henry Troy Wade's Motion for a New Trial Under Fed. R. Crim. P. 33 (Doc. 236). This Court denied the defendant's motion for a new trial on January 14, 2025. (Doc. 253).

The only new grounds the defendant raised in Defendant's Motion for Relief (Doc. 305) are the following:

1. The Court wrongfully sustained an objection before it was made;

2. The United States presented insufficient evidence of guilt at trial; and

3. The United States engaged in prosecutorial misconduct.

Accordingly, the United States responds to these grounds.

## II. Memorandum of Law

Motions for a new trial are highly disfavored and should only be granted with great caution. *See United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (internal quotations omitted). The court may vacate a judgment and grant a new trial if the interest of justice so requires. *See* Rule 33, Fed. R. Crim. P.; see also *United States v. Pedrick*, 181 F.3d 1264, 1266-67 (11th Cir. 1999); *United States v. Wilson*, 894 F.2d 1245, 1252 (11th Cir. 1990). The trial court is vested with substantial discretion in determining whether to grant a motion for a new trial based

on the interests of justice.  *See United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994); *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).

Courts have interpreted the "interest of justice" standard as requiring a new trial where the substantial rights of the defendant have been prejudiced by errors or omissions during trial, *United States v. Stephens*, 365 F.3d 967, 976-77 (11th Cir. 2004), where there has been a deprivation of a constitutional right affecting the trial, *United States v. Arango*, 670 F. Supp. 1558 (S.D. Fla. 1987), judgment aff'd, 853 F.2d 818 (11th Cir. 1988), or where the evidence preponderates heavily against the verdict, *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985).

In deciding whether to grant a motion for new trial pursuant to the Federal Rules of Criminal Procedure, the district court must carefully weigh the evidence and may assess the credibility of witnesses, but it must not entirely usurp the jury's function or set aside the jury's verdict simply because it runs counter to the result that the district court believes is more appropriate.  *See United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005).  A judge's power to grant a new trial based on a different assessment of the evidence must be exercised with caution and invoked only in exceptional cases; the judge cannot entirely usurp the jury's function and set aside the verdict merely because the court would have ruled the other way.  *See United States v. Crittenden*, 46 F.4th 292 (5th Cir. 2022).

### III.    Argument

The defendant's motion to vacate his judgment should be denied because the interests of justice do not require a new trial.

### a.  The defendant is not entitled to a new trial based on this Court's evidentiary rulings.

The defendant is not entitled to a new trial based on judicial error or prejudice because this Court did not err its evidentiary rulings.

Courts have discretion in administering the rules of evidence.  *See United States v. Barton*, 909 F.3d 1323, 1336 (11th Cir. 2018) ("Almost nowhere is the rationale for abuse-of-discretion review more powerful than when the district court makes an evidentiary ruling. Evidentiary issues—whether particular evidence is relevant, or cumulative, or unfairly prejudicial—frequently demand the trial court make close judgment calls").  For the interests of justice to require a new trial based on evidentiary rulings, there must be a significant possibility of substantially impacting the jury's verdict.  *See id.*; *United States v. Orr*, 2017 WL 11541771 at *4 (M.D. Fla. Oct. 10, 2017) ("The Court finds no error with its evidentiary rulings, nor does it find that any error had a significant possibility of substantially impacting the jury's verdict in light of the overwhelming evidence of Mr. Orr's guilt").

Here, this Court appropriately applied the rules of evidence.  The defendant points to a part of the trial in which this Court made an evidentiary ruling before the United States made its formal objection.  Doc. 305 at 67.  The following exchange took place at trial:

4

Q.    Did you determine that address on your own or were you provided that address?

A.    That -- I was provided that by the phone call.

Q.    All right.  And was that Michelle Herczeg, Agent --

Ms. Nowalk:        Objection.  Relevance.

The Court:          Sustained.

By Ms. McCarty:

Q.    And who gave you that information?

The Court:          Sustained.  I'm sorry.

Ms. Nowalk:        Objection to relevance, Your Honor.

The Court:          I'm sorry.  I anticipated it.

*Id.*

This Court ruled that evidence of whether Herczeg provided the information was not admissible.  Despite this ruling, the defense continued to try to elicit this evidence from the witness.  *See id.*  This Court rightly anticipated that the United States would object again to relevance.  *See id.*  The United States did, again, object to the relevance of this evidence.  *See id.*  This Court appropriately prohibited the defense from introducing evidence that this Court already ruled was inadmissible. This Court was also well-aware of the United States' position pertaining to the admissibility of evidence related to Herczeg through its arguments in pretrial motions.  On June 25, 2024, the defense filed a motion to compel evidence related to Herczeg (Doc. 124), a hearing was held on July 15, 2024 (Doc. 132), this Court reviewed materials in camera, and this Court ruled that the defense was not entitled

5

to the materials they sought pertaining to Herczeg.  Doc. 134.  In the motion and
oral arguments, it was clear that the defense sought these materials to impeach
Herczeg.  Any attempt on the part of the defense to introduce evidence about
Herczeg in this trial would have been to impeach her credibility.  The defense then
moved to compel testimony from Herczeg at trial.  Docs.  177, 179.  This Court
denied the defense's motion to compel her testimony.  Doc. 181.  This Court knew
based on lengthy pretrial arguments pertaining to Herczeg and the United States'
objection immediately preceding the defense's question that the United States was
going to object to the defense's question, "And who gave you that information."
This Court's evidentiary ruling was consistent this Court's order immediately
proceeding the question asked.  The defense failed to abide by this Court's
evidentiary ruling by continuing to seek the information that was held inadmissible.
This Court did not need the United States to object before it enforced its prior
evidentiary ruling.  The defendant cannot be prejudiced by this Court anticipated
ruling on the United States' objection when the United States promptly objected and
this Court was simply enforcing its prior evidentiary ruling.

The interests of justice do not require the defendant receive a new trial based
on this Court's evidentiary rulings.

### b. The defendant is not entitled to a new trial based on the sufficiency of the evidence presented at trial.

The interests of justice do not require the defendant receive a new trial based
on the sufficiency of the evidence.

To grant a new trial based on the sufficiency of the evidence, the evidence must weigh so heavily against the verdict that it would be unjust to enter a judgment. *See United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001); *United States v. Crittenden*, 46 F.4th 292, 297 (5th Cir. 2022) (reversing the granting of a new trial as an abuse of discretion and reasoning that granting a new trial requires both that the verdict weigh heavily against the evidence and that a miscarriage of justice may have resulted). A court may not reweigh the evidence and set aside a verdict simply because it feels some other result would be more reasonable. *See United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). The evidence must preponderate heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand. *See id.* Granting a new trial based on the sufficiency of the evidence is not favored and reserved for "really exceptional cases." *See United States v. Brown*, 934 F.3d 1278, 1297-1299 (11th Cir. 2019) (holding that the court did not abuse discretion in denying a new trial based on inconsistent verdicts among several defendants and evidence that was not presented at trial).

Here, there is sufficient evidence the defendant committed the six counts of wire fraud for which a jury found him guilty.

### i. First, there is sufficient evidence for each count.

The defendant argues that the there is insufficient evidence to prove each count in the indictment (Doc. 305), but sufficient evidence was introduced at trial to establish the defendant devised or participated in a scheme to defraud the Small Business Administration ("SBA") by submitting Economic Injury Disaster Loan

7

("EIDL") applications for loans and grants with material misrepresentations. The
evidence presented at trial revealed that there were materially false representations in
the EIDL applications for which the defendant received two grants and four loans.

### 1. Count One: Troy Wade Services LLC ($3,000 grant)

Count One of the indictment relates to the $3,000 wire deposit from the
United States Treasury into the defendant's MidFlorida Credit Union bank account
in the Middle District of Florida. Doc. 1. This wire transfer was for the EIDL grant
that the defendant received for Troy Wade Services LLC.

The two EIDL applications submitted for this business were introduced into
evidence as United States Trial Exhibits 1 and 8. The material differences between
the applications are as follows:

|  | Gross Revenues for 12 months prior to January 31, 2020 | Cost of Goods for 12 months prior to January 31, 2020 | Number of employees as of January 31, 2020 |
|---|---|---|---|
| United States Trial Exhibit 1 (grant approved) | $215,678 | $46,311 | 3 |
| United States Trial Exhibit 8 | $954,832 | $186,325 | 17 |

The application that was approved for a grant listed the business activity as
"Heating/Air Conditioning/HVAC." *See* United States Trial Exhibit 1. Both
applications listed the business address in Marion County, Florida. Evidence at trial
revealed that neither this business nor the defendant had a license with the Florida
Department of Business and Professional Regulation to conduct HVAC work in
Florida. *See* United States Trial Exhibit 58. Testimony from a representative of the

8

Florida Department of Revenue revealed that this business was not registered with the department.  Testimony and exhibits from the IRS showed there were no tax filings for the reported employees.  *See* United States Trial Exhibits 34-35.

It is unreasonable to believe the defendant owned an HVAC business in Florida without a license that made $215,000 in 2019 and with three employees who were never reported to the Florida Department of Revenue or the IRS.  It is also unreasonable to believe the information contained in the Troy Wade Services LLC application that was approved for a grant was correct considering the defendant submitted another application for the same business with completely different financial and employee information.

Because the evidence presented at trial is sufficient to show the defendant's Troy Wade Services LLC application contained material misrepresentations, the evidence is sufficient to support the guilty verdict on Count One.

### 2. Counts Two and Three: A1 Commercial & Residential Contractors (MEP) LLC ($76,000 loan and $3,000 grant)

Count Two of the indictment relates to the $76,000 wire deposit from the United States Treasury into the defendant's MidFlorida Credit Union bank account in the Middle District of Florida.  Doc. 1.  This wire transfer was for the EIDL loan the defendant received for A1 Commercial & Residential Contractors (MEP) LLC.  Count Three relates to the $3,000 wire deposit from the SBA for the EIDL grant the defendant received for the same business.

9

The two EIDL applications submitted for this business were introduced into evidence as United States Trial Exhibits 2 and 10. The material differences between the applications are as follows:

| | Gross Revenues for 12 months prior to January 31, 2020 | Cost of Goods for 12 months prior to January 31, 2020 | Number of employees as of January 31, 2020 |
|---|---|---|---|
| United States Trial Exhibit 2 (grant and loan approved) | $246,146 | $88,105 | 3 |
| United States Trial Exhibit 10 | $812,114 | $294,251 | 16 |

Both applications listed the business activity as "Heating/Air Conditioning/HVAC" with business addresses in South Carolina. *See* United States Trial Exhibits 2 and 10. Testimony and exhibits from the IRS showed there were no tax filings for the reported employees. *See* United States Trial Exhibits 34-35.

Evidence at trial revealed that the SBA deposited the $76,000 loan into the defendant's bank account on June 30, 2020. *See* United States Trial Exhibit 13. From the date the loan was deposited until April 2021, there were fifty-six transfers from this account to the defendant's personal bank account ending in 7886 for a total of $80,990. *See id.*; United States Trial Exhibit 17. During the same time frame, there were twenty-six transfers from the A1 Commercial & Residential Contractors (MEP) LLC bank account to the defendant's Troy Wade LLC bank account ending in 0305 for a total of $50,880. *See* United States Trial Exhibits 12-13.

It is unreasonable to believe the defendant owned an HVAC business that made $246,146 in 2019 with three employees who were never reported to the IRS. The SBA money was just funneled into another business account and the defendant's personal account, which suggests that A1 Commercial & Residential Contractors (MEP) LLC did not need the SBA money because it was not operating a business. It is also unreasonable to believe the information contained in the A1 Commercial & Residential Contractors (MEP) LLC application that was approved for a grant and loan was correct considering the defendant submitted another application for the same business with completely different financial and employee information.

Because the evidence presented at trial is sufficient to show the defendant's A1 Commercial & Residential Contractors (MEP) LLC application contained material misrepresentations, the evidence is sufficient to support the guilty verdicts on Counts Two and Three.

### 3.  Count Four: TK Farms LLC ($147,500 loan)

Count Four of the indictment relates to the $147,000 wire deposit from the United States Treasury into the defendant's MidFlorida Credit Union bank account in the Middle District of Florida.  Doc. 1.  This wire transfer was for the EDIL loan the defendant received for TK Farms LLC.

The two EIDL applications submitted for this business were introduced into evidence as United States Trial Exhibits 3 and 11.  The material differences between the applications are as follows:

|  | Gross Revenues for 12 months prior to January 31, 2020 | Cost of Goods for 12 months prior to January 31, 2020 |
|---|---|---|
| United States Trial Exhibit 3 (loan approved) | $1,353,679 | $416,130 |
| United States Trial Exhibit 11 | $989,412 | $281,130 |

Both applications listed the business activity as "Agriculture." *See* United States Trial Exhibits 3 and 11. The EIDL applications for this business both listed the same Marion County, Florida business address. *See id.* The property information for the business address was introduced at trial. *See id.*; United States Trial Exhibits 36-37. The owner of the property's daughter, Layla McMahon, also testified about the property. Doc. 197. The evidence revealed that McMahon owned and lived on the property until the titled was transferred to her father in 2018 through a quitclaim deed. *See* United States Trial Exhibits 36. The property is 3.79 acres, and it has two mobile homes. *See id.* In December 2019, the defendant entered into a contract to buy the property, but the sale was never finalized. *See* United States Trial Exhibits 37. The defendant was able to live on the property during 2020. When McMahon's family reclaimed possession of the property in December 2020, McMahon testified that the only changes to the property were new construction inside the home (a bigger closet and bathroom), which was not related to agriculture.

The defendant's witness, Erin Horton, testified that the business had cattle, and they slaughtered the cattle to serve meat at their restaurant. However, a

representative from the Marion County zoning department, Ken Weyrauch, testified that cattle was not allowed to be processed on the property.  Additionally, an exhibit from the United States Department of Agriculture ("USDA") revealed that a representative conducted a search of the Food Safety and Inspection Service ("FSIS") databases and this business was not found.  *See id.*  The USDA also contacted USDA Farm Service Agency ("FSA") and USDA Natural Resources Conservation Service, and the defendant did not receive any funding from these agencies.  *See id.*

The application that was approved for a loan reported that this business had thirteen employees.  *See* United States Trial Exhibit 3.  However, a witness from the Florida Department of Revenue testified that this business never registered with them.  IRS documents and testimony also revealed that these employees were never reported to the IRS.  *See* United States Trial Exhibits 34-35.

It is unreasonable to believe the defendant owned an agriculture business that made $1.3 million in 2019 operating on a property the defendant only had access to in 2020.  The Marion County zoning regulations and the USDA evidence revealed that the defendant was not permitted to engage in this type of agriculture business, either.  None of the defendant's thirteen employees were reported to the Florida Department of Revenue or the IRS.  It is also unreasonable to believe the information contained in the TK Farms LLC application that was approved for a loan was correct considering the defendant submitted another application for the same business with completely different financial information.

13

Because the evidence presented at trial is sufficient to show the defendant's

TK Farms LLC application contained material misrepresentations, the evidence is

sufficient to support the guilty verdict on Count Four.

### 4. Count Five: Little Lights Early Childhood Development LLC (145,800 loan)

Count Five of the indictment relates to the $145,800 wire deposit from the

United States Treasury into the defendant's MidFlorida Credit Union bank account

in the Middle District of Florida.  Doc. 1.  This wire transfer was for the EDIL loan

the defendant received for Little Lights Early Childhood Development LLC.

The two EIDL applications submitted for this business were introduced into

evidence as United States Trial Exhibits 4 and 9.  The material difference between

these applications is the type of business listed.  The approved application listed the

type of business as "Entertainment Services," and the unapproved application listed

the type of business as "Educational Services."  *See* United States Trial Exhibits 4

and 9.  The financial information was the same between the two applications, both

reporting cost of goods for 12 months prior to January 31, 2020, as $291,314.  *See id.*

The defendant's expert witness, Mike Rossmeier, testified that schools do not have

cost of goods.  He testified that he would have questioned why the school and

entertainment business have the same information.

After the defendant was indicted in this case, he filed a tax return for this

business name claiming in the tax return that it was a daycare.  *See* United States

Trial Exhibit 34 at 14.  A representative from the Florida Department of Children

and Families testified at trial that the defendant and this business did not have a license and had never applied for a license to be a daycare.

Property appraiser documents were introduced at trial for the business address listed on the applications. The address purports to be in Marion County, Florida, but the records show the address does not exist. *See* United States Trial Exhibits 4, 9, and 39.

The defendant listed on the applications that he had nine employees for this business. Testimony from the Florida Department of Revenue revealed that this business never registered with them. IRS documents and testimony also revealed that these employees were never reported to the IRS. *See* United States Trial Exhibits 34-35.

The evidence at trial revealed that the SBA deposited the 145,800 loan into the defendant's bank account on August 4, 2020. *See* United States Trial Exhibit 15. From the date the loan was deposited until April 2021, all the money in this bank account was transferred into three other accounts in the defendant's name. *See id.*; United States Trial Exhibits 12, 14, 17-19. There were forty-one transfers to the defendant's personal bank account ending in 7886 for a total of $65,048.76. *See* United States Trial Exhibits 17-19. There were twenty-two transfers to the defendant's Troy Wade LLC bank account ending in 0305 for a total of $28,760. *See* United States Trial Exhibit 12. There were seven transfers to the defendant's TK Farms bank account ending in 6925 for a total of $52,000.

It is unreasonable to believe the defendant owned an entertainment business, school, or daycare at a property that does not exist and that made $756,000 in 2019 with 9 employees who have never been reported to the Florida Department of Revenue or IRS.  Additionally, the SBA money was all funneled into other business accounts and the defendant's personal account, which suggests that Little Lights Early Childhood Development LLC was not an operating business.

Because the evidence presented at trial is sufficient to show the defendant's Little Lights Early Childhood Development LLC application contained material misrepresentations, the evidence is sufficient to support the guilty verdict on Count Five.

### 5.  Count Six: Big Valley Grille & Bistro LLC ($149,100 loan)

Count Six of the indictment relates to the $149,100 wire deposit from the United States Treasury into the defendant's MidFlorida Credit Union bank account in the Middle District of Florida.  Doc. 1.  This wire transfer was for the EDIL loan the defendant received for Big Valley Grille & Bistro LLC.

The three EIDL applications submitted for this business were introduced into evidence as United States Trial Exhibits 5-7.  The material differences between the applications are as follows:

|  | Gross Revenues for 12 months prior to January 31, 2020 | Cost of Goods for 12 months prior to January 31, 2020 |
| --- | --- | --- |
| United States Trial Exhibit 5 (loan approved) | $761,155 | $105,863 |

| United States Trial Exhibit 6 | $267,419 | $49,527 |
|---|---|---|
| United States Trial Exhibit 7 | $761,155 | $105,863 |

Each application listed the business activity as "Eating & Drinking Places" and "Restaurant - Casual Dining." *See* United States Trial Exhibits 5-7. The approved application listed the business address in Marion County, Florida. *See* United States Trial Exhibit 5. Property records were introduced at trial for this property, and the owner of the property, Mary Louise Davis, testified. *See* United States Trial Exhibit 38. The evidence revealed that Mrs. Davis has owned and lived in this property since 1984. *See id.* She testified that she does not know the defendant. In response to a question about whether someone was running a restaurant out of her home, she testified, "The only person who runs anything out of my home is me." The Marion County zoning department witness, Weyrauch, testified that it is prohibited for a restaurant to run out of this property.

The approved application reported that thirteen employees work for the business. *See* United States Trial Exhibit 5. Testimony from the Florida Department of Revenue revealed that this business never registered with them. IRS documents and testimony also revealed that employees were never reported to the IRS for this business. *See* United States Trial Exhibits 34-35.

On March 24, 2021, after the application was submitted to the SBA, the SBA sent an email to the email address on the application asking for a government issued

photo ID, voided check, and a copy of the business checking account for November
and December of 2019. *See Id.* at 98.

On March 25, 2021, the "Big Valley" email address responded with three
attachments, and the body of the email read, "Please call me if you have any
questions 843-735-4409." *See id.* at 99. The evidence at trial showed that this phone
number is, and was at the time of this email, registered to the defendant. *See* United
States Trial Exhibits 23-24. The documents attached to the email included two
envelopes purportedly from MidFlorida Credit Union and addressed to the business
address provided on the application, which was Mrs. Davis's home. *See* United
States Trial Exhibit 5 at 102 and 104. There were also two bank statements
purportedly from MidFlorida Credit Union reflecting the bank account ending in
8001. *See id.* at 103 and 105. The statements are dated November 30, 2019, and
December 31, 2019. *See id.* The evidence at trial revealed that the bank account
ending in 8001 was not opened until August 2020. *See* United States Trial Exhibit
16.

It is unreasonable to believe that the defendant owned a restaurant that made
$761,155 in 2019 while operating out of Mrs. Davis's home without her knowledge.
It is unreasonable to believe the information in the EIDL application that was
approved for a loan was correct considering the defendant submitted another
application for the same business with completely different financial information.

Further, the SBA's correspondence with the defendant after the application
was submitted reveals what information was material to their decision, as they

18

directly asked the defendant for follow-up documentation to support his application. The documents the defendant provided to the SBA were false. The defendant did not receive mail from the MidFlorida Credit Union at Mrs. Davis's home, and he did not have bank statements in November and December 2019 for an account that was not opened until August 2020.

Because the evidence presented at trial is sufficient to show the defendant's Big Valley Grille & Bistro LLC application and supplemental correspondence with the SBA contained material misrepresentations, the evidence is sufficient to support the guilty verdict on Count Six.

### i.    Second, there is sufficient evidence the defendant participated in a scheme to defraud.

The defendant argues that the there is insufficient evidence he personally submitted the applications (Doc. 305); however, the United States was only required to establish that the defendant participated in a scheme to defraud the SBA. On September 2, 2024, the defendant, by way of counsel, filed Defendant Henry Troy Wade's Proposed Jury Instructions. Doc. 153. The defendant proposed an instruction for the offense of wire fraud. *See id.* at 18-20. In relevant part, the defendant's proposed instruction reads:

> (1) the Defendant knowingly devised *or participated in* a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

*Id.* at 18 (emphasis added).

On September 23, 2024, this Court instructed the jury on the essential elements of the offense of wire fraud.  Docs. 200 and 207.  In relevant part, this Court instructed the jury:

> (1) the Defendant knowingly devised *or participated in* a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Doc. 207 at 11 (emphasis added).

Because the Eleventh Circuit Patterned Jury Instructions, the defendant's own proposed jury instructions, and the instructions read to the jury before deliberation in this case all provide that an essential element of wire fraud is "the defendant knowingly devised or participated in a scheme to defraud," the United States was able to secure a conviction on a theory of participation alone.  However, there is also sufficient evidence that the defendant was the person who submitted the EIDL applications.  Of the eleven applications that were submitted in this case, eight of the applications were submitted from the defendant's home.  Every application contained the defendant's personal information, including his social security number.  The contact phone numbers in the applications were registered to the defendant.  All the loan and grant proceeds went into the defendant's bank accounts.  Aside from the Little Lights Early Childhood Development LLC bank account, the defendant was the sole signature on all the bank accounts into which SBA funds were wired.  Although there were two other signers on the Little Lights Early Childhood Development LLC bank account, all the SBA money that went into this account was transferred directly and completely into three bank accounts in which the defendant

20

was the sole signature.  The defendant used the SBA proceeds.  He funneled the SBA loans and grants into his personal account, purchased items on Amazon that were sent to his home, and paid his rent.  The defendant was the sole beneficiary of the EIDL loan and grant proceeds.  It is unreasonable to believe that someone other than the defendant committed this scheme to defraud for the sole benefit of the defendant.

Further, after the defendant was indicted in this case, he filed a 2019 tax return showing an attempt to legitimize the businesses at issue in this case.  *See* United States' Trial Exhibit 34.  The filing of the tax return directly negates the defendant's claim that someone filed the applications without his knowledge.  If someone tried to use the defendant's identity to commit this criminal scheme, they would have had no reason to try to legitimize these businesses after the defendant was indicted.  When the defendant was indicted, the other person trying to use the defendant as a scapegoat succeeded by being undetected and having the defendant take the fall for his or her criminal conduct.  It is unreasonable to believe that the person who supposedly stole the defendant's identity to commit crimes would then try to help the defendant by legitimizing the businesses through the IRS.

Because the United States was only required to prove the defendant participated in the scheme to defraud the SBA, despite sufficient evidence that the defendant submitted these applications, there was sufficient evidence to sustain his conviction.

The defendant is not entitled to a new trial based on the sufficiency of the evidence because there was sufficient evidence presented at trial that the defendant

committed each offense.

**c. The defendant is not entitled to a new trial based on prosecutorial misconduct.**

The defendant should not be granted a new trial based on prosecutorial misconduct.

The touchstone of the due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982); *see also United States v. Scrushy*, 721 F.3d 1288, 1308 (11th Cir. 2013) ("The evidence—that jurors had a romantic interest in the FBI agent and expressed that interest in notes sent through the Marshals—is not material; nor would it be likely to produce an acquittal on retrial"); *United States v. Wilson*, 149 F.3d 1298, 1302 (11th Cir. 1998) ("prosecutor's remarks, although improper, did not affect Defendant's substantial rights and did not deprive him of a fair trial").

Here, the United States did not engage in any prosecutorial misconduct that could have affected the fairness of the defendant's trial. After the jury returned a guilty verdict in this case, the undersigned received a call from an attorney. The attorney advised that he is representing someone in a contractual dispute with the defendant. The attorney knew the defendant was charged with wire fraud, and he asked the undersigned about the facts of this case to determine whether his civil dispute was related. The undersigned explained the nature of this case and told the attorney that the defendant was convicted of the charges at trial. The attorney asked when the defendant was going to be sentenced, and the undersigned gave the

attorney the sentencing date.  Time passed, and the undersigned received a second call from this attorney.  In the second call, the attorney told the undersigned that he was going to serve her with a subpoena to testify in the civil matter.  The attorney advised that he desired testimony from the undersigned to establish the defendant was found guilty of wire fraud.  The undersigned explained to the attorney that he must provide a *Touhy* request before the undersigned could testify.  Further, the undersigned explained that the information the attorney seeks can be obtained through other evidence, like a certified judgment of conviction and sentence.  The undersigned has not spoken to this attorney since the second call.  The undersigned is unaware as to why her name is on an arbitration witness list for *Gillam & Associates, Inc. v. Wade Development Group LLC*.  Because the undersigned did not discuss this case with the attorney until a guilty verdict was already rendered in this case, the undersigned's conduct had no bearing on the fairness of the defendant's trial.

The interests of justice do not require the defendant receive a new trial based on prosecutorial misconduct.

## IV.   Conclusion

The United States respectfully requests this Honorable Court to deny the defendant's motion to vacate his judgment because the interests of justice do not require the defendant's judgment to be vacated.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:

Hannah Watson
Assistant United States Attorney
Florida Bar No. 0123632
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:   (352) 547-3600
Facsimile:    (352) 547-3623
E-mail: hannah.watson@usdoj.gov

**U.S. v. Henry Troy Wade**                    **Case No. 5:22-cr-84-JA-PRL**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Henry Troy Wade

<u>/s/ Hannah Watson</u>
Hannah Watson
Assistant United States Attorney
Florida Bar No. 0123632
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:   (352) 547-3600
Facsimile:    (352) 547-3623
E-mail: hannah.watson@usdoj.gov